THE LAW OFFICES OF

# JOSEPH A. BONDY

JOSEPH A. BONDY

STEPHANIE R. SCHUMAN
(OF COUNSEL)

1776 BROADWAY
SUITE 2000
NEW YORK NY 10019
TEL 212.219.3572
FAX 212.219.8456

JOSEPHBONDY@MAC.COM

January 24, 2020

Hon. J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
Courtroom 706
New York, NY 10007

Re: <u>United States v. Lev Parnas, et. al., 19-cr-725 (JPO)</u>

Dear Judge Oetken:

We write in response to the letter addressed to this Court from Todd Blanche, counsel to co-defendant Igor Fruman, dated January 22, 2020. In his letter, Mr. Blanche urges our client to "claw-back" any potentially attorney-client privileged materials that we may have provided to the House Permanent Select Committee on Intelligence ("HPSCI"), pursuant to its duly-issued subpoena to Mr. Parnas.

At the outset, we point out that the burden is on the party asserting the attorney-client privilege to first establish that there was: 1) a communication; 2) made in confidence; 3) to an attorney; 4) by a client; 5) for the purpose of seeking or obtaining legal advice.[1] The party asserting attorney-client privilege has the burden of conclusively proving each element,[2] and courts strongly disfavor blanket assertions of the privilege[3] as "unacceptable."[4] In addition, the

---

[1] See, e.g., 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. ed 1964); see also In Re County of Erie, 473 F.3d 413 (2007).
[2] See, e.g., United States v. Mejia, 655 F.3d 126 (2d Cir. 2011).
[3] United States v. White, 970 F.2d 328, 334 (7th Cir. 1992) ("A blanket claim of privilege that does not specify what information is protected will not suffice.").
[4] SEC v. Gulf & Western Industries, Inc., 518 F. Supp. 675, 682 (D.D.C. 1981).

mere fact that an individual communicates with an attorney does not make the communication privileged.[5]

There are also instances in which the attorney-client privilege is waived, including when the substance of otherwise privileged communications are shared with third parties[6], when the communications reflect a criminal or fraudulent intent between the parties[7], when the communications are part of a joint—yet conflicted—representation, and in cases where the parties to a joint defense have become adverse in their interests.[8]

Of importance to the instant matter, the common-law privileges that are available in civil or criminal court proceedings—such as the attorney-client privilege—do not act as a shield for an individual's compliance with a congressional committee demand.

### Congressional Subpoenas and the Attorney-Client Privilege

On September 30, 2019, HPSCI requested that Mr. Parnas produce a number of materials deemed relevant to its impeachment inquiry. (*See e.g.*, Exhibit A). On October 3, 2019, his then-attorney, John Dowd, informed the committee that Mr. Parnas, along with co-defendant Igor Fruman, who had received a similar request, would not be complying. (*See e.g.*, Exhibit B). On October 9, 2019, Parnas and Fruman were arrested on the instant charges. At arraignment, Mr. Parnas was represented by Mr. Dowd's colleague, Kevin Downing. On October 10, 2019, HPSCI subpoenaed Parnas and Fruman for the same materials it had previously requested. (*See e.g.*, Exhibit C). Of particular relevance herein, Parnas was requested to produce:

> 11.    Any and all documents supplied in response to any subpoena, search warrant, seizure warrant, summons, or other legal writ, notice, investigation or order or request for information, property, or materials, made by Congress or any U.S. federal or state agency.

(Exhibit C, Schedule p. 2).

On October 30, 2019, we wrote to HPSCI, indicating that Mr. Dowd no longer represented Mr. Parnas, who wished to fully comply with his subpoena. In electing to comply, Mr. Parnas broke with Mr. Fruman and his co-defendants, and any common-interest shared to that point ended.

---

[5] *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997) (rejecting applicability of common interest doctrine to communications at a meeting with white house counsel's office attorneys and private attorneys for the first lady).

[6] *See Kleeberg v. Eber*, 2019 US Dist LEXIS 80428 (SDNY May 13, 2019).

[7] *See In re Grand Jury Subpoena Duces Tecum*, 731 F2d 1032 (2d Cir. 1984).

[8] *See Newsome v. Lawson*, 286 F. Supp. 3d 657 (D. Del. 2017) (describing the two exceptions to the joint-representation privilege, when both parties jointly waive the privilege and when there is adverse-litigation between either one of the parties and the attorney, or between the parties themselves.)

On November 26, 2019, we were informed by HPSCI Investigators that the Committee does not recognize the attorney-client privilege. In point of fact, Congress has complete discretionary authority as to whether and when it recognizes the attorney-client privilege. The basis for Congress's right to refuse to recognize assertions of attorney-client privilege is derived from both its inherent constitutional authority to investigate and each chamber's constitutional authority to determine the rules of its proceedings.[9]

The attorney-client privilege is simply not a constitutionally based privilege.[10] Rather, the attorney-client privilege is a judicially-created exception to the general evidentiary principle of full disclosure in the context of court proceedings.[11] "... It is critically important to remember that the attorney-client privilege is designed for, and properly confined to, the adversary process: the adjudicatory resolution of conflicting claims of individual obligations in a civil or criminal proceeding. The need to protect individual interests is less compelling in an investigatory setting where a legislative committee is not empowered to adjudicate a witness's liberty or property."[12] Indeed, several courts have recognized that "only infrequently have witnesses…[in congressional hearings] been afforded rights normally associated with an adjudicative proceeding."[13]

The suggestion that the legislature's investigatory authority is subject to non-constitutional, common law rules developed by the judicial branch to govern its proceedings is arguably contrary to the concept of separation of powers. Such a rule would, in effect, permit the judiciary to determine congressional procedures, which is irreconcilable with the constitutional authority granted to each house of Congress to determine its own rules.[14] The Supreme Court has recognized that "only infrequently have witnesses ... [in congressional hearings] been afforded the procedural rights normally associated with an adjudicative proceeding."[15]

Given this framework, along with Mr. Parnas's legal obligation to Congress to produce all materials that were seized pursuant to subpoena, search warrant, seizure warrant or summons, and his wish to be fully cooperative, on January 11, 2020, we produced a complete copy of Mr.

---

[9] U.S. Const., Art. I, sec. 5, cl. 2.

[10] *See Moran v. Burbine*, 475 U.S. 412, 430 (1986) (Sixth Amendment not a source for attorney- client privilege); *see also Fisher v. United States*, 425 U.S. 391, 396-97 (1976) (compelling an attorney to disclose client communications does not violate the client's Fifth Amendment privilege against self-incrimination); *see also Hannah v. Larche*, 363 U.S. 420, 445 (1960) ("[O]nly infrequently have witnesses [in congressional hearings] been afforded the procedural rights normally associated with an adjudicative proceeding."); *see also United States v. Fort*, 443 F.2d 670 (1970) (rejecting contention that the constitutional right to cross-examine witnesses applied to congressional investigations).

[11] *See Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991).

[12] *When Congress Comes Calling: A Study on the Principles, Practices, and Pragmatics of Legislative Inquiry*, THE CONSTITUTION PROJECT, 67-68 (2017), https://docs.pogo.org/report/2017/POGO_TCP_When_Congress_Comes_Calling.pdf [https://perma.cc/495Y-C53B].

[13] *Hannah v. Larche*, 363 U.S. at 445.

[14] *See Noel Canning*, 134 S. Ct. at 2574.

[15] *See Hannah*, 363 U.S. at 445; *see also Fort*, 443 F.2d at 670; *see also In the Matter of Provident Life and Accident Co.*, E.D. Tenn., S.D., CIV-1-90-219 (June 13, 1990) (per Edgar, J.) (noting that the court's earlier ruling on an attorney-client privilege claim was "not of constitutional dimensions, and is certainly not binding on the Congress of the United States").

Parnas's iPhone 11 to HPSCI, subject only to a confidentiality agreement between Mr. Parnas and HPSCI, protecting Mr. Parnas's attorneys' work-product and opinion-privileged materials from the date of his arrest forward, involving attorneys Edward B. MacMahon, Jr. and Joseph A. Bondy.

### Conflicts of Interest and Third Party Disclosures

As set forth above, in the early stages of this case, Mr. Parnas was represented by Attorney John Dowd, along with Kevin Downing, in connection with HPSCI's letter-request and subpoena, and his initial appearance in the instant case. Mr. Fruman was also apparently represented by these same attorneys during the same time frame.

Mr. Parnas waives all privilege with respect to the communications he had with Mssrs. Dowd and Downing. Furthermore, the substance of his and Mr. Fruman's legal representation appears to have been shared with third parties, including Jay Sekulow, Rudolf Giuliani, John Sale, Jane Raskin, and others. (*See e.g.,* Exhibit A, October 8, 2019, e-mail from John Dowd to Jay Sekulow, Jane Raskin, Rudolf Giuliani, John Sale, and others.) As the Court may know, Mssrs. Sekulow, Raskin, and Giuliani are also attorneys for President Trump. Mr. Giuliani and the President have interests divergent from Mr. Parnas's wish to cooperate with Congress and the Government. Mr. Parnas believes that his and Mr. Fruman's ostensibly joint representation by Attorneys Dowd and Downing was conflicted and intended from its inception to obstruct the production of documents and testimony responsive to a lawful congressional subpoena.

The reality of this case is that a congressional committee investigating the President's impeachment required the information contained in Mr. Parnas's iPhone 11, sooner rather than later, and that criminal and civil enforcement and third-party material filtration processes did not allow for such production with alacrity. Mr. Blanche's request,[16] if granted, would have the effect of suppressing the flow of materials to Congress that are detrimental to the President and his attorneys through misplaced reliance on tools related to criminal, adversarial proceedings.[17]

### Joint Representations Gone Awry

The attorney-client privilege cannot be used as a shield by one jointly-represented party against the other when their aligned legal interests diverge, as in the case at bar. Here, Attorney Dowd undertaking a joint representation of Mr. Parnas and Mr. Fruman—with the President's explicit permission—constituted an actual conflict of interest at the time and appears designed to have obstructed Mr. Parnas's compliance with HPSCI's subpoena and any ensuing efforts to cooperate with congressional investigators or federal prosecutors. Given this conflict, Mr. Parnas

---

[16] It has been represented that Mr. Giuliani and Mr. Fruman share a joint defense. *See* Michael Rothfield et al., *How 2 Soviet Émigrés Fueled the Trump Impeachment Flames*, THE NEW YORK TIMES (Dec. 19, 2019), https://www.nytimes.com/2019/12/19/nyregion/lev-parnas-igor-fruman.html [https://perma.cc/C8DX-JJYM].

[17] *See United States v. Fort*, 443 F.2d 670 (D.C. Cir. 1970), *cert. denied*, 403 U.S. 932 (1971); *see also Hannah v. Larche*, 363 U.S. 420 (1960); *see also Moran v. Burbine*, 475 U.S. 412, 430 (1986) (Sixth Amendment is not a source for attorney-client privilege).

relieved Attorneys Dowd and Downing and wishes to cooperate fully—despite efforts to obstruct his compliance and cooperation.

That Mr. Fruman, now with Mr. Giuliani aiding in his efforts, wishes to persist in avoiding his subpoena by not providing similar assistance to the Government, is his right. However, it should not be weaponized to prevent Mr. Parnas from sharing materials and testimony, including about the facts of this representation, with Congress.

**Conclusion**

We believe that our production of subpoenaed materials to HPSCI was entirely appropriate and warrants no "claw-back", nor does it bar any future production. Certainly, Mr. Parnas should not be prejudiced in his efforts at legal compliance by a third party who chooses to remain in contempt of his congressional subpoena and assert a privilege not recognized by Congress.

To the extent that any party is now asserting an attorney-client privilege to any materials, the burden is on that party to first establish that the items are in fact privileged with no applicable exceptions, and then to procure a protective order with the Government and this Court shielding the items from use in the instant case.

Respectfully submitted,

Joseph A. Bondy
Stephanie R. Schuman
*Counsel to Lev Parnas*

c:     All Counsel

Exhibit A

# Congress of the United States
## Washington, DC 20515

September 30, 2019

**VIA U.S. MAIL**

Dear Mr. Lev Parnas:

Pursuant to the House of Representatives' impeachment inquiry, we hereby request that you preserve and produce certain documents and material listed in the attached document request and relevant to the Committees' investigations, by no later than **October 7, 2019**. We further request your appearance at a deposition on **October 10, 2019**.

This request is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform. The requested documents shall be collected as part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate.[1] Your failure or refusal to comply with this request, including at the direction or behest of the President or the White House, shall constitute evidence of obstruction of the House's impeachment inquiry and may be used as an adverse inference against you and anyone with whom you are acting in concern, including the President.

The Committees are investigating the extent to which President Trump jeopardized national security by pressing Ukraine to interfere with our 2020 election and by withholding security assistance provided by Congress to help Ukraine counter Russian aggression, as well as any efforts to cover up these matters.

A growing public record indicates that the President, his agent Rudy Giuliani, and others appear to have pressed the Ukrainian government to pursue two politically-motivated investigations. The first is a prosecution of Ukrainians who provided evidence against Mr. Trump's convicted campaign chairman, Paul Manafort. The second relates to former Vice President Joseph R. Biden Jr., who is challenging President Trump for the presidency in 2020. The Committees have reason to believe that you have information and documents relevant to these matters.

The Committees are prepared to work cooperatively with you to obtain this information. Please let us know by **5:00 pm on October 1, 2019** whether you intend to voluntarily comply with the Committees' request, or whether the Committees should pursue alternative means to obtain the information.

---

[1] *See* Letter from Jerrold Nadler, Chairman, Committee on the Judiciary, to Adam B. Schiff, Chairman, Permanent Select Committee on Intelligence; Maxine Waters, Chairwoman, Committee on Financial Services; Elijah E. Cummings, Chairman, Committee on Oversight and Reform; and Eliot L. Engel, Chairman, Committee on Foreign Affairs (August 22, 2019).

Please contact staff for the Permanent Select Committee on Intelligence at (202) 225-7690 to arrange for the production of documents and discuss the deposition. Enclosed is a copy of the House Deposition Rules for your information.

Sincerely,

Adam B. Schiff
Chairman
House Permanent Select Committee
  On Intelligence

Eliot L. Engel
Chairman
House Committee on Foreign Affairs

Elijah E. Cummings
Chairman
House Committee on Oversight and Reform

Enclosures

cc:   The Honorable Devin Nunes, Ranking Member
      House Permanent Select Committee on Intelligence

      The Honorable Michael McCaul, Ranking Member
      House Committee on Foreign Affairs

      The Honorable Jim Jordan, Ranking Member
      House Committee on Oversight and Reform

## SCHEDULE

The Committees request that Lev Parnas preserve and produce all documents and communications for the period of **January 20, 2017, through the present**, regardless of form and as defined below, referring or relating to:[2]

(1)   Paul Manafort, Hunter Biden, Mykola Zlochevsky, Burisma Holdings Ltd. ("Burisma"), or any employee or agent of Burisma;

(2)   Efforts, including but not limited to those by you, Rudolph ("Rudy") Giuliani, Igor Fruman, Vitaly Pruss, Semyon ("Sam") Kislin, Joseph diGenova, or Victoria Toensing, to induce, compel, petition, press, solicit, suggest, or otherwise pressure current or former Ukrainian government officials, politicians, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, to investigate matters related to Burisma, or any U.S. persons or entities, including but not limited to Paul Manafort, Hunter Biden, Joseph Biden, the Democratic National Committee, or Hillary Clinton, as well as any responses by current or former Ukrainian government officials, politicians, or other persons of influence, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, concerning the same;

(3)   Serhiy Leshchenko, Igor Kolomoisky, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for these individuals, including but not limited to efforts to induce, compel, petition, press, solicit, suggest, or otherwise pressure current or former Ukrainian officials, politicians, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, to investigate matters related to Leshchenko and Kolomoisky, and any documents, communications, or meetings with former Prosecutor General Yuri Lutsenko related to these matters;

(4)   The White House, President Donald Trump, Attorney General William Barr, Donald Trump Jr., Rudolph ("Rudy") Giuliani, former Ambassador Kurt Volker, State Department counselor T. Ulrich Brechbuhl, State Department Deputy Assistant Secretary George Kent, Assistant Secretary of State for European Affairs A. Wess Mitchell, or anyone in or associated with the Trump Administration;

(5)   Former Congressman Pete Sessions, including but not limited to a meeting in or about May 2018;

(6)   Former United States Ambassador to Ukraine Marie "Masha" Yovanovitch, including but not limited to the former Ambassador's recall or dismissal;

(7)   Petro Poroshenko, Volodymyr Zelensky, Nazar Kholodnitsky, Andriy Telizhenko, Andriy Yermak, Yuri Lutsenko, Serhiy Shefir, Ivan Bakanov, Ruslan Ryaboshapka, Andriy Bogdan, Kostiantyn Kulyk, Victor Shokin, Lena ("Olena") Zerkal, Andriy Favorov, Gennady Bogolyubov, or anyone who is or has been associated with Ukrainian

---

[2] Any alternate spellings or transliterations of any names referenced herein would also render a document responsive to these requests.

1

law enforcement or anti-corruption organizations or entities, including but not limited to the office of the Prosecutor General, the Special Anti-Corruption Prosecutor's Office, or the National Anti-Corruption Bureau of Ukraine (NABU);

(8)    United States foreign assistance to Ukraine, including but not limited to the Ukraine Security Assistance Initiative and any efforts to withhold, delay, or release security assistance to Ukraine;

(9)    Monies, funds, gifts, contributions, donations, or offers of anything of value made directly or indirectly to U.S. political campaigns, candidates, parties, political action committees (PACs) and super PACs—including but not limited to America First Action, Inc.—by any foreign individuals or entities of any type (*e.g.*, government, business, organization, etc.), individuals or entities on the Office of Foreign Assets Control's (OFAC) list of Specially Designated Nationals and Blocked Persons (SDNs) or Sectoral Sanctions Identifications List, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals or entities; and

(10)    The source of any monies, funds, gifts, contributions, donations, or offers of anything of value made by Global Energy Producers, LLC or Aaron Investments I, LLC to America First Action, Inc., including but not limited to a $325,000 donation in May 2018.

The Committees also request that you produce:

(11)    Any and all documents supplied in response to any subpoena, search warrant, seizure warrant, summons, or other legal writ, notice, investigation or order or request for information, property, or material, made by Congress or any U.S. federal or state agency, that could lead to discovery of any facts within the Committee's investigation, or efforts to obstruct authorized investigations into these matters.

To expedite the Committee's review, responsive materials should be produced immediately upon being identified, rather than waiting to submit all documents at one time, and all material produced be bates-stamped and provided in a searchable, Adobe PDF electronic format.

### For purposes of this document request:

The documents requested include all those that are in your custody, control, or possession, or within your right of custody, control, or possession. If the document request cannot be complied with in full, it shall be complied with to the extent possible, with an explanation of why full compliance is not possible. Any document withheld on the basis of privilege shall be identified on a privilege log submitted with the responses to this document request. The log shall state the date of the document, its author, his or her occupation and employer, all recipients, the occupation and employer of each recipient, the subject matter, the privilege claimed and a brief explanation of the basis of the claim of privilege. If any document responsive to this document request was, but no longer is, in your possession, custody, or control, identify the document and explain the circumstances by which it ceased to be in your possession, custody, or control.

**Definitions:**

For purposes of this document request:

1.   The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: agreements; papers; memoranda; correspondence; reports; studies; reviews; analyses; graphs; diagrams; photographs; charts; tabulations; presentations; working papers; records; records of interviews; desk files; notes; letters; notices; confirmations; telegrams; faxes, telexes, receipts; appraisals; interoffice and intra office communications; electronic mail (e-mail); electronic messages; text messages; instant messages; marketing materials; contracts; cables; recordings, notations or logs of any type of conversation, telephone call, meeting or other communication; bulletins; printed matter; computer printouts; teletype; invoices; transcripts; audio or video recordings; statistical or informational accumulations; data processing cards or worksheets; computer stored or generated documents; computer databases; computer disks and formats; machine readable electronic files; data or records maintained on a computer; diaries; questionnaires and responses; data sheets; summaries; minutes; bills; accounts; estimates; projections; comparisons; messages; electronically stored information; and similar or related materials. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.   The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, computer, encrypted electronic communications app, discussions, releases, delivery, or otherwise.

3.   The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this document request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

Exhibit B

<u>VIA E-MAIL</u>

October 3, 2019

Nicolas A. Mitchell
Investigation Counsel
House Permanent Select Committee on Intelligence
Democratic Congress of the United States
Washington, D.C. 20515


Subject: Your letters of September 30, 2019, to Lev Parnas and Igor Fruman

Dear Mr. Mitchell:
This letter will confirm our recent telephone conversation of October 1, 2019, in response to the Committees' extensive and detailed letters which the Committees unfortunately caused to be published on the internet in violation of all norms of fairness and decency.
In that call, I advised you of my anticipated retainer by Lev Parnas and Igor Frumas. I now represent Lev Parnas and Igor Fruman with respect to the alleged impeachment investigation referenced in your letters of September 30, 2019.

1

I will meet with Mr. Parnas and Mr. Fruman beginning this weekend to get acquainted with them, the facts and documents requested in your detailed letter in order to prepare a response to the Committees' requests. This effort will take some time.

Be advised that Messrs. Parnas and Fruman assisted Mr. Giuliani in connection with his representation of President Trump.  Mr. Parnas and Mr. Furman have also been represented by Mr. Giuliani in connection with their personal and business affairs. They also assisted Joseph DiGenova and Victoria Toensing in their law practice.Thus, certain information you seek in your September 30, 2019, letter is protected by the attorney-client, attorney work product and other privileges. Given the breadth and detail of your request for information, an appropriate privilege review cannot reasonably be conducted by October 7, 2019, the date you have set to produce documents and communications. The amount of time required is difficult to determine. but we are happy to keep you advised of our progress and engage in a rolling production of non-privileged documents.

Your request for documents and communications is overly broad and unduly burdensome.  The subject matter of your requests is well beyond the scope of your inquiry. This, in combination with requiring immediate responses, leads me to the inescapable conclusion that the Democratic Committee members' intent is to harass, intimidate and embarrass my clients.

The "Committees" and its Democratic members are well aware that my clients are entitled to retain counsel and counsel is entitled to an adequate period of time to get acquainted with the clients, review documents, consult with the clients and prepare the clients for any

potential testimony and document production. Requesting production of documents within seven days and requiring testimony within fifteen days is unreasonable and not in keeping with your Committees' standard procedures.

Considering the important factual questions and legal issues attendant to the alleged whistleblower, your investigation, your authority and requests for information, your charter should be amended to exhibit some semblance of due process, fairness, justice and common decency.

Respectfully submitted,

John M. Dowd
Counsel to Messrs. Parnas and Fruman

Exhibit C

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

To    LEV PARNAS

You are hereby commanded to be and appear before the

House Permanent Select Committee on Intelligence

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: HOUSE PERMANENT SELECT COMMITTEE ON INTELLIGENCE
HVC-304, THE CAPITOL
Date: OCTOBER 16, 2019                          Time: 5:00 P.M.

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                          Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                          Time: _____

To U.S. Marshals Service, or any authorized Member or congressional staff _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 10th day of OCTOBER , 2019 .

_____
Chairman or Authorized Member

Attest:

_____
Grace J. Lott, Deputy Clerk
Clerk

## PROOF OF SERVICE

Subpoena for _Lev Parnas_

Address _C/o JOHN DOWD, 5335 WISCONSIN AVE. N.W.,_

_SUITE 700, WASHINGTON, D.C. 20015_

before the  Permanent Select Committee on Intelligence

_U.S. House of Representatives_
_116th Congress_

Served by (print name)  Maher Bitar

Title  General Counsel

Manner of service  Electronic Mail

Date  10/10/2019

Signature of Server

Address  Permanent Select Committee on Intelligence, HVC-304, U.S. Capitol

## SCHEDULE

In accordance with the attached Definitions and Instructions, you, Lev Parnas, are hereby required to produce, for the period of **January 20, 2017, to the present**, all documents and communications in your custody, possession, or control referring or relating to:

1.   Paul Manafort, Hunter Biden, Mykola Zlochevsky, Burisma Holdings Ltd. ("Burisma"), or any employee or agent of Burisma;

2.   Efforts, including but not limited to those by you, Rudolph ("Rudy") Giuliani, Igor Fruman, Vitaly Pruss, Semyon ("Sam") Kislin, Joseph diGenova, or Victoria Toensing, to induce, compel, petition, press, solicit, suggest, or otherwise pressure current or former Ukrainian government officials, politicians, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, to investigate matters related to Burisma, or any U.S. persons or entities, including but not limited to Paul Manafort, Hunter Biden, Joseph Biden, the Democratic National Committee, or Hillary Clinton, as well as any responses by current or former Ukrainian government officials, politicians, or other persons of influence, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, concerning the same;

3.   Serhiy Leshchenko, Igor Kolomoisky, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for these individuals, including but not limited to efforts to induce, compel, petition, press, solicit, suggest, or otherwise pressure current or former Ukrainian officials, politicians, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals, to investigate matters related to Leshchenko and Kolomoisky, and any documents, communications, or meetings with former Prosecutor General Yuri Lutsenko related to these matters;

4.   The White House, President Donald Trump, Attorney General William Barr, Donald Trump Jr., Rudolph ("Rudy") Giuliani, former Ambassador Kurt Volker, State Department Counselor T. Ulrich Brechbuhl, State Department Deputy Assistant Secretary George Kent, Assistant Secretary of State for European Affairs A. Wess Mitchell, or anyone in or associated with the Trump Administration;

5.   Former Congressman Pete Sessions, including but not limited to a meeting in or about May 2018;

6.   Former United States Ambassador to Ukraine Marie "Masha" Yovanovitch, including but not limited to the former Ambassador's recall or dismissal;

7.   Petro Poroshenko, Volodymyr Zelensky, Nazar Kholodnitsky, Andriy Telizhenko, Andriy Yermak, Yuri Lutsenko, Serhiy Shefir, Ivan Bakanov, Ruslan Ryaboshapka, Andriy Bogdan, Kostiantyn Kulyk, Victor Shokin, Lena ("Olena") Zerkal, Andriy Favorov, Gennady Bogolyubov, or anyone who is or has been

associated with Ukrainian law enforcement or anti-corruption organizations or entities, including but not limited to the office of the Prosecutor General, the Special Anti-Corruption Prosecutor's Office, or the National Anti-Corruption Bureau of Ukraine (NABU);

8.    United States foreign assistance to Ukraine, including but not limited to the Ukraine Security Assistance Initiative and any efforts to withhold, delay, or release security assistance to Ukraine;

9.    Monies, funds, gifts, contributions, donations, or offers of anything of value made directly or indirectly to U.S. political campaigns, candidates, parties, political action committees (PACs) and super PACs—including but not limited to America First Action, Inc.—by any foreign individuals or entities of any type (*e.g.*, government, business, organization, etc.), individuals or entities on the Office of Foreign Assets Control's (OFAC) list of Specially Designated Nationals and Blocked Persons (SDNs) or Sectoral Sanctions Identifications List, or any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such individuals or entities; and

10.   The source of any monies, funds, gifts, contributions, donations, or offers of anything of value made by Global Energy Producers, LLC or Aaron Investments I, LLC to America First Action, Inc., including but not limited to a $325,000 donation in May 2018.

You are also hereby required to produce:

11.   Any and all documents supplied in response to any subpoena, search warrant, seizure warrant, summons, or other legal writ, notice, investigation or order or request for information, property, or material, made by any U.S. federal or state agency.

2

Exhibit D

---------- Forwarded message ----------
From: John Dowd <joh​█████████████om>
Date: On Tue, Oct 8, 2019 at 7:07 AM
Subject: Fwd: Query?
To: Carole Dowd <████████████████████com>, Lev Parnas <lp█████
<███████████████████████>,Deanna Van Rensburg <drensburg @██████
Cc:                                                       ; Igor Fruman

John M Dowd

Begin forwarded message:

From: John Dowd <joh█
Date: October 8, 2019 at 7:06:25 AM EDT
To: Jay Sekulow <██████████████m>, Victoria Toensing <V█████████
<JoAnn.Zafonte█████████ Jane Raskin <jr██████████>, Rudy Giuliani
<███████████ com>, Kevin Downing <██████ >, Joseph diGenova
<jo█████████ , "Martin R. Raskin" <mra██████ >, "Jon A. Sale"
Subject: Query?                          >, John Dowd

We are sending a letter to the intel committee to eliminate any doubt that Igor and Lev will appear to answer questions
because we are are not prepared to do so.

We are tempted to take on a challenge to the legitimacy of the inquiry without all the bells and whistles. It would help to
know if the Boss/WH is going to challenge.
I hope. This is a huge opportunity to educate the public about the stupidity of Nancy's folly and the fake WB.
By the way McCollough has left the Compass Rose over pangs of conscience regarding the handoff to Schiff.y ( not
enough to serve the public interest)Turn the hounds loose!

John M Dowd