# C A D W A L A D E R

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

January 27, 2020

**VIA E-MAIL**

The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     _United States v. Igor Fruman_, 19 Cr. 725 (JPO)

Dear Judge Oetken:

I write on behalf of Mr. Fruman to reply to Mr. Bondy's letters, dated January 24, 2020,
concerning Mr. Parnas' request for a third modification of the Protective Order governing
discovery in this action and opposing Mr. Fruman's request that Mr. Bondy claw back certain
privileged materials from the HPSCI.[1]

Specifically, Mr. Parnas asks the Court to amend the Protective Order entered in this action for
a third time to allow Mr. Parnas to produce materials produced by Apple, Inc. pursuant to a
search warrant in this case from Mr. Parnas' iCloud account (the "Production Material").  The
Government and Mr. Fruman oppose this request.  Mr. Fruman has reason to believe that the
Production Material contains privileged information belonging to Mr. Fruman and others.
Allowing Mr. Bondy to produce the Production Material to the HPSCI without reviewing and
removing such information violates, _inter alia_, Mr. Fruman's rights as they relate to the
prosecution before Your Honor.  No one, including Mr. Parnas, the prosecutors in charge of
the instant case, or any other defendants have reviewed the materials that Mr. Bondy intends to
produce to determine whether any privileged material exists.  Moreover, Mr. Bondy has
indicated that he did not undertake a privilege review for his recent productions to Congress.

For the reasons previously outlined and as detailed below, the Court should deny Mr. Parnas'
request, or, in the alternative, order Mr. Bondy to diligently conduct a privilege review,
provide a privilege log to the attorneys for Mr. Fruman and other third party privilege holders,
and allow Mr. Fruman's attorneys and other third party privilege holders an opportunity to file

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in my January
22, 2020 letter to the Court.

**Todd Blanche**  Tel +1 212 504-6226   Fax +1 212 504-6666   todd.blanche@cwt.com

C A D W A L A D E R

The Honorable J. Paul Oetken
January 27, 2020

any objections to Mr. Bondy's privilege log.  No document subject to an objection should be
disclosed by Mr. Bondy or Mr. Parnas without an order of this Court.

Mr. Fruman also respectfully requests, for the reasons stated in my January 22, 2020 letter, that
the Court order Mr. Bondy to confirm in writing either that he (1) did not previously produce
any materials to the HPSCI for which Mr. Fruman has an applicable privilege; or (2) has
clawed back or attempted to claw back any privileged materials improperly produced to the
HPSCI.  Putting aside the assertions by Mr. Bondy about whether Congress recognizes
attorney-client privilege—the attorney-client privilege certainly exists in this criminal
proceeding and Mr. Parnas's previous productions to the HPSCI required modification of the
Protective Order governing the production of discovery in this case.

**Mr. Fruman's and Mr. Parnas' Jointly Held Privilege**

Mr. Bondy's letter focuses on the joint privilege held by Mr. Fruman and Mr. Parnas in
connection with the arrests in the instant case.[2]  Mr. Bondy did not address the other potentially
voluminous material within the Production Material and in previous material produced by Mr.
Bondy that is jointly privileged.  The Production Material (and materials previously produced)
very likely contains privileged information, including attorney-client communications, relating
to Mr. Fruman, Global Energy Producers, LLC ("Global Energy"), and other entities owned
and operated by Mr. Parnas and Mr. Fruman.  By way of example, Global Energy engaged the
law firm of Greenberg Traurig, LLP in connection with an investigation by the Federal
Election Commission ("FEC").  Mr. Fruman has reason to believe that attorney-client
communications related to the FEC investigation may be included in the Production Material.[3]
With respect to those materials, Mr. Parnas would not solely hold the attorney-client privilege,

---

[2] Contrary to the claims in Mr. Bondy's letter, John Dowd and Kevin Downing never agreed to represent
Mr. Parnas in connection with the instant case.  The Eastern District of Virginia allowed Mr. Downing to
enter a limited appearance for Mr. Fruman and Mr. Parnas at their initial presentment, but almost
immediately thereafter, Mr. Downing withdrew from any potential permanent representation and
recommended different counsel—Edward B. MacMahon, Jr.—whom Mr. Parnas retained as part of his
legal team for this matter.

[3] Mr. Fruman cannot state whether the Production Material actually contains privileged material because
he has not been provided with a copy of that material.  However, in reviewing the materials that the
Government produced to Mr. Fruman, we have identified clearly privileged material that would likely
also appear in the Production Material.

CADWALADER

The Honorable J. Paul Oetken
January 27, 2020

and would not have the authority to unilaterally waive such privilege.[4] *See Jordan (Bermuda) Inv. Co. v. Hunter Green Investments Ltd.*, 2006 WL 2773022, at *1 (S.D.N.Y. Sept. 27, 2006). That is but one example, and there are many more, but certainly the privilege issues implicated by the repeated amendments to the Protective Order are far more expansive than the attorney-client relationships identified in Mr. Bondy's letter.

Mr. Parnas claims it is Mr. Fruman's burden to establish that the documents are privileged, and in support of his position, cites general principles governing the attorney-client privilege and other privileges. But those cases are inapposite here because neither Mr. Fruman nor his counsel are in possession of the potentially privileged communications from the Production Material. Ordinarily, the party asserting privilege is in possession of the privileged documents. Thus, it makes sense for that party to bear the burden of proving he or she is properly withholding the documents on the basis of an applicable privilege. Here, only Mr. Parnas and the Government (although apparently not the prosecutors on this case) are in possession of the Production Material; and *neither* Mr. Bondy *nor* the prosecutors in charge of this prosecution have reviewed the Production Material. Accordingly, it is not possible to determine whether and/or to what extent any applicable privileges apply because Mr. Parnas and his counsel are the only ones with access to the information. Mr. Fruman cannot establish a privilege over documents that he does not possess (although we are confident that such material exists). For similar reasons, any discussion of waiver of privilege with respect to the information in the Production Material should first be the subject of adversarial proceedings so that Mr. Fruman (and others)[5] can protect any applicable privilege. Mr. Fruman should be afforded the opportunity to assert or waive privileges belonging to him, and the Court should not permit Mr. Parnas to unilaterally and haphazardly produce documents to third parties that he does not have the authority to produce. *See U.S. v. Mackey*, 405 F. Supp. 854, 861-62 (E.D.N.Y. 1975)

---

[4] Mr. Parnas appears to claim a right to unilaterally waive the joint privilege based on the adverse-litigation exception to the attorney-client privilege. The case he cites, *Newsome v. Lawson*, 286 F. Supp. 657, 663 (D. Del. 2017), decided by the United States District Court for the District of Delaware, recognizes that that exception applies when former clients sue one another. Mr. Fruman and Mr. Parnas are not suing each other, nor using the privileged information against each other. Therefore, that exception does not apply here.

[5] Mr. Fruman is not the only person whose privileged information is at risk. For example, Mr. Parnas has represented that he was employed as a translator for Victoria Toesing and Joseph DiGenova in connection with their representation of Dymitry Firtash. Clearly, any materials Mr. Parnas received as a translator assisting attorneys in the representation of Mr. Firtash would be protected by the attorney-client privilege. And that privilege that would be held by Mr. Firtash, the client, not Mr. Parnas.

C A D W A L A D E R

The Honorable J. Paul Oetken
January 27, 2020

(recognizing that "confidentiality once destroyed cannot be restored, and that a privilege is
effective only if it bars all disclosures at all times.").

Mr. Bondy and Mr. Parnas disregarded the purpose of the Protective Order and the rights of
other interested parties by seeking to produce the Production Material without reviewing the
contents for privilege or alerting third parties regarding the potential production of privileged
materials. (*See* D.I. 35 (recognizing the "privacy and confidentiality interests" implicated in
these proceedings and limiting parties to use of "Protected Materials" "only for purposes of
defending the charges, in connection with any sentencing, and pursuing any appeals, in relation
to this criminal action."); *see also* D.I. 58 (letter from Mr. Bondy implying to the Court that he
would undertake a privilege review, or, at a minimum, recognizing the need for one).)  For
these reasons, the Court should deny Mr. Parnas' request to modify the Protective Order for a
third time.

**A Congressional Subpoena Does Not Abrogate Mr. Fruman's Privilege**

Mr. Parnas claims that common law privileges do not apply to Congressional subpoenas.  But
Congress respects the confidentiality of documents subject to applicable common law
privileges, and rarely compels the production of such privileged material.  *See, e.g., Senate
Permanent Subcomm. on Investig. v. Ferrer*, 856 F.3d 1080, 1083 (D.C. Cir.  2017).  Even if
Congress does not always recognize privilege protections, federal courts most certainly do.
*See* FED. R. EVID. 1101(c); *Upjohn Co. v. United States*, 449 U.S. 383, 389
(1981) ("The attorney-client privilege is the oldest of the privileges for confidential
communications known to the common law.").  Mr. Parnas cannot use the Congressional
subpoena as an excuse to ignore his existing obligations in these proceedings—obligations that
are well-established in this Court—and should comply with his obligation to protect privileged
information belonging to third parties.

Mr. Bondy also has an ethical duty to protect privileged materials within the Production
Material from disclosure.  *See* N.Y. RULES OF PROF'L CONDUCT 1.6 and 4.4.  Rather than
conduct a privilege review to alert Mr. Fruman and others of potentially privileged material in
the Production Material and other materials he produced, Mr. Bondy made the unilateral
decision to produce everything.  He knew that the Production Material was governed by this
Court's Protective Order and he should know that the attorney-client and work-product
privileges are applicable in federal court.  Mr. Bondy also knows or should know that the
Production Material likely contains material protected by the attorney-client and work-product
privileges held by others, and that Mr. Parnas was not authorized to control the disclosure of
those privileged materials.  At the very least, Mr. Bondy should have reviewed the Production

# C A D W A L A D E R

The Honorable J. Paul Oetken
January 27, 2020

Material before he requested permission from the Court to produce it. N.Y. RULES OF PROF'L
CONDUCT, Cmt. 1 ("Responsibility to a client requires a lawyer to subordinate the interests of
others to those of the client, but that responsibility does not imply that a lawyer may disregard
the rights of third persons."). And after reviewing the materials he should have alerted
attorneys for Mr. Fruman and others that there were potentially privileged materials in the
Production Material to allow Mr. Fruman's attorneys and other third-party privilege holders to
take the necessary steps to protect the privileged communications.

Mr. Bondy apparently entered into an agreement with HPSCI that does not require him to
produce privileged material as it relates to *his* representation of Mr. Parnas, yet stunningly
claims his hands are tied as it relates to any other privileged information contained on the
materials he has produced to the HPSCI, including potentially the Production Material. *See*
Mr. Bondy's letter dated January 24, 2020, at p. 3-4 ("on January 11, 2020, we produced a
complete copy of Mr. Parnas's iPhone 11 to HPSCI, subject only to a confidentiality
agreement between Mr. Parnas and HPSCI, protecting Mr. Parnas's attorneys' work-product
and opinion-privileged materials from the date of his arrest forward, involving attorneys
Edward B. MacMahon, Jr. and Joseph A. Bondy"). This confidentiality agreement evidences
Mr. Bondy's intent to protect his own attorney-client communications and attorney work-
product while intentionally disregarding the protections afforded to the attorney-client
communications and attorney work-product of Mr. Fruman and other privilege holders. It also
contradicts Mr. Bondy's claim that Congress does not recognize the attorney-client and
attorney work-product privileges. Importantly in New York State, the attorney-client privilege
is not only a product of common law and state bar ethics rules, but it has been codified under
state law. N.Y. C.P.L.R. §4503(a). For the reasons stated above, Mr. Parnas is very likely in
possession of privileged information for which he alone cannot waive privilege. Mr. Bondy is
obligated to protect such information from disclosure; which he has failed to do in not
reviewing the Production Material or other materials prior to producing, let alone identifying
and protecting any privileged information contained therein.

**Conclusion**

For these reasons, Mr. Fruman respectfully requests that the Court order Mr. Bondy to
expeditiously review any material he previously produced to the HPSCI, provide a privilege
log to the attorneys for Mr. Fruman and other third party privilege holders and allow Mr.
Fruman's attorneys and other third party privilege holders an opportunity to file any objections
to Mr. Bondi's privilege log with this court. This Court can then rule on any objections,
address disputed documents, and order Mr. Bondy to claw back privileged materials from
Congress, as necessary.

# CADWALADER

The Honorable J. Paul Oetken
January 27, 2020

Further, Mr. Fruman respectfully requests that the Court deny Mr. Parnas' request for a third modification to the Protective Order, or in the alternative, order Mr. Bondy to diligently conduct a privilege review, provide a privilege log to the attorneys for Mr. Fruman and other privilege holders and allow Mr. Fruman's attorneys and other privilege holders an opportunity to file any objections to Mr. Bondy's privilege log with this Court.  In addition, the Court should order that no document subject to an objection by Mr. Fruman or others may be disclosed by Mr. Bondy or Mr. Parnas without further order of this Court.

Respectfully Submitted,

Todd Blanche

cc:    All counsel of record (by e-mail)