UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

UNITED STATES OF AMERICA,

          - against-

LEV PARNAS,
IGOR FRUMAN, and
ANDREY KUKUSHKIN,

                           Defendants

------------------------------------------------------------------- X

                                            S1 19 Cr. 725 (JPO)

## DECLARATION OF GERALD B. LEFCOURT, ESQ., PURSUANT TO 28 U.S.C. §1746 AND S.D.N.Y. LOCAL RULE 2 (B)

     I, Gerald B. Lefcourt, hereby declare pursuant to the provisions of 28 U.S.C. §1746 and

S.D.N.Y. Local Rule 2 (B), and under penalty of perjury, that the following is true and correct:

     1.     I am an attorney at law, admitted to practice before the courts of the state of New

York and *inter alia*, the United States District Court for the Southern District of New York.

     2.     Gerald B. Lefcourt, P.C., of which I am a principal, is counsel of record to

Andrey Kukushkin, a defendant in this matter.  I make this declaration to present certain facts

which are used in support of Mr. Kukushkin's Pretrial Motions and are discussed in the

accompanying Memorandum of Law.

### FACTS RELEVANT TO THE MOTION TO DISMISS AND TO SUPPRESS

     3.     In or about 2018, Lev Parnas, Igor Fruman, David Correia, Andrey Kukushkin

and others were forming a cannabis business (the "Cannabis Venture").  As is typically the case

when forming a venture such as this, Messrs. Parnas, Fruman, Correia, Kukushkin and the others

consulted with multiple attorneys and advisors to ensure their compliance with various laws and regulations. Some of those consultations and communications were conducted in person, while others were conducted by phone, and still others by email.

4.  ███████████████ through his role at a business advisory company called ███

███████████████████████████████████

5.  As an advisor, ████████████ had a close working relationship with the defendants, particularly Mr. Kukushkin who was assisting in the planning of the Cannabis Venture.

6.  According to the government, ███████████████████████

███████████████████████████████████ *See*

Ex. A, p. 6

7.  Another advisor, this one a legal advisor, was ██████████████████ is admitted to the bar of both the State of California and the State of New York, information that is readily obtainable from online public data. ██████████████████████

██████

8.  In the course of forming the Cannabis Venture, Mr. Kukushkin, Mr. Correia, attorneys at ███████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████

9.  ███████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

10.    The ██████████ Email, as with all others in The Chain, was an attorney-client privileged communication. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

11.    An attorney with whom Mr. Kukushkin and others enjoyed an attorney-client relationship was an addressee on each email in The Chain, including the ██████████ Email.

12.    One of those attorneys is ██████████, who was an addressee on the ████████ ████ Email.

13.    At the time of Mr. Kukushkin's arrest, ████████████████████████████ ██████████████████ During that process, documents were submitted to the government which clearly identified ██████████ as an attorney and clearly established a valid attorney-client relationship between ██████████, Mr. Kukushkin, and various corporate entities ████████ ████████████████████████

14.    In November 2019, after receiving the index for the government's first discovery production, I learned for the first time that on or about October 22, 2019, subsequent to his arrest, the government sought and obtained a search warrant for Mr. Kukushkin's email and Apple accounts.  I, and other attorneys associated with my office, Mr. Kukushkin's ██████ ████████████ as well as ██████████ and other attorneys had been emailing Mr. Kukushkin using this account during the time period covered by the search warrant.  Accordingly, my office

informed the government that Mr. Kukushkin's accounts may contain attorney-client privileged communications and asked whether a filter team had been set up to assure no attorney-client privileged communications were reviewed or turned over to the government's trial team or to the defense.

15.      In addition, my office provided a preliminary list of email addresses for attorneys with whom Mr. Kukushkin enjoyed an attorney-client relationship and whose correspondence likely appeared in the email and Apple accounts in question.  Two email addresses on that list were for ███████      The ███████ Email was addressed to one of those two email addresses.

16.      In early December 2019, a second list of attorneys with whom Mr. Kukushkin maintained an attorney-client relationship was provided to the government.  Included on that list was at least one attorney from the law firm ███████████      Attorneys from ███████████ sent and/or received emails contained within The Chain.

17.      In January 2020, the government contacted my office to advise that the filter team had seen communications between Mr. Kukushkin and two attorneys at ███████████ ███  that had not been on our first two lists.  These attorneys ███████████ ███████      The government inquired as to whether Mr. Kukushkin maintained an attorney-client relationship with these attorneys.  The government was told that Mr. Kukushkin did in fact have an attorney-client relationship with both attorneys and that he was asserting privilege with respect to communications with them.  Notably, ███████ sent and/or received various emails within The Chain.

18.      In addition, the government was provided with names of other attorneys at ███████████  with whom Mr. Kukushkin enjoyed an attorney-client relationship and

asserted his attorney-client privilege with respect to those communications.  Included on that list was ███████████████ another attorney who sent and/or received emails in The Chains.

19.     Also in January 2020, the government advised counsel for Messrs. Fruman, Correia and Kukushkin that materials Mr. Parnas was seeking to turnover to Congress as part of the impeachment proceedings were covered by a jointly held attorney-client privilege related to their lawful cannabis business.  In response, Messrs. Fruman, Correia and Kukushkin lodged objections to Mr. Parnas' application on that basis. Dkt. 80, 81, 85.

20.     In February 2020, my office further raised privilege issues with the government. More specifically, (a) the defendants' emails accounts contained communications protected by the attorney-client privilege, including in some cases, a jointly held privilege relating to their Cannabis Venture; and (b) the ██████ Email, which had been quoted in the indictment and various search warrants, may be privileged.  In addition, we requested information as to whether the ██████ Email had been reviewed by a filter team prior to being presented to the grand jury.  In response, the government asked the basis for the defendants' assertion of the privilege along with a litany of questions concerning the defendants' relationships with various attorneys and advisors on The Chain.

21.     My office further inquired about the government's filter team procedures, the extent of the government's invasion of the privilege, the basis for the government's violation of Mr. Kukushkin's attorney-client privilege, and expressed bewilderment at the government's suggestion that there was any basis to conclude that The Chain or any email within it, including the ██████ Email, was not privileged.

22.     The government posited that the privilege had been broken ████████████ ████████████████████████ along with several other possible grounds for contending the ████████ Email wasn't privileged.

23.     In or about March (as well as in July and August) 2020, ████████████ ██████████████████████████████ asserted the attorney-client privilege with respect to every email contained within The Chain, including the ████████ Email.  *See* Ex. A. ████████████████████████████████████████████ ████████████████████████████████████

24.     At the end of April 2020, the government contacted counsel for all defendants and informed us that from August to December 2018, certain attorneys ████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████ Further, the defense was informed that the government was considering seeking a ruling that these communications were not privileged and/or subject to the crime-fraud exception.  In response, Messrs. Kukushkin, Fruman, and Correia maintained that the emails were privileged, and no exception applied.  To my knowledge, the government never made an application to the Court for a privilege ruling.

25.     In or about May 2020, the government sought and obtained a search warrant for ████████████████████████ The ████████ Email was quoted in the probable cause affidavit.  *See* Ex. G.

26.     ██████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

27.    

28.    In September 2020, the Superseding Indictment was returned without any mention of the ██████████ Email.

29.    In October 2020, in response to an inquiry by the defendants, the government again asserted that the ██████████ Email, ████████████████████████████████ was not privileged, although the government did not know if it intends to use it at trial.  The government did not identify any grounds for its contention.

30.    In November 2020, in response to direct questions posed by the defense, the government refused to identify on what basis it claimed that the ██████████ Email was not privileged, insisting only that it is the defendants' burden to establish privilege.

**FACTS RELEVANT TO THE MOTION FOR A FOREIGN DEPOSITION**

31.    I have maintained a relationship with counsel for Foreign National-1 since shortly after the initial indictment was unsealed.

32.    During that time, I have had several conversations with him, all pursuant to a joint defense agreement and a common interest privilege.  Without disclosing any facts inconsistent with that agreement or the privilege, based on those discussions, it is my understanding that Foreign National-1 will not come to the United States voluntarily to testify at Mr. Kukushkin's trial.

## RULE 16.1 COMPLIANCE FACTS

33.     Consistent with FED. R. CRIM. P. RULE 16.1, defense counsel made written

demands for, and met and conferred with the government concerning the production of

additional *Brady* material, as well as Exhibits, 3500 material, and *Giglio* material and the timing

thereof.

34.     An agreement between the parties could not be reached.

## IDENTIFICATION OF EXHIBITS ANNEXED HERETO

35.     Annexed hereto are true copies of the following documents, with the letter prefix

corresponding to the Exhibit letter designation:

A.  Government's *Brady* Disclosure dated September 24, 2020.

B.  Government's *Brady* Disclosure dated October 28, 2020.

C.  Government's *Brady* Disclosure dated November 24, 2020.

D.  Chart of Search Warrant Applications citing, referencing, incorporating by reference, or relying upon in any manner attorney-client privileged communications of the defendants.

E.  Search Warrant to ███ and Apple, Inc. dated October 22, 2019.

F.  Search Warrant for Mr. Kukushkin's iPhone dated November 13, 2019.

G.  Search Warrant to ███ dated May 4, 2020.

H.  Mr. Kukushkin's demand for a Bill of Particulars dated November 19, 2020

I.  Government's response to Mr. Kukushkin's demand for a Bill of Particulars dated November 24, 2020

December 1, 2020

/s/     Gerald B. Lefcourt
Gerald B. Lefcourt