UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

        - against-

LEV PARNAS,
IGOR FRUMAN, and
ANDREY KUKUSHKIN

                Defendants.

------------------------------------------------------------ X

S1 19 Cr. 725 (JPO)

**MEMORANDUM OF LAW IN SUPPORT OF ANDREY KUKUSHKIN'S
PRE-TRIAL MOTIONS**

December 1, 2020

GERALD B. LEFCOURT, P.C.
Gerald B. Lefcourt
Faith A. Friedman
1776 Broadway, Suite 2000
New York, N.Y. 10019
Tel: (212) 737-0400
Fax: (212) 988-6192
Email: lefcourt@lefcourtlaw.com
*Attorneys for Andrey Kukushkin*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................1

   A. Personal and Professional Background ............................................................1

   B. The Superseding Indictment ..........................................................................2

   C. The Unique Legal Issues Presented by this Case ...........................................4

      1. The Overwhelming Exculpatory Evidence ..............................................4

      2. The Violation of the Attorney-Client Privilege .......................................4

ARGUMENT ..............................................................................................................5

POINT ONE

    A SEVERANCE OF COUNTS FOUR, FIVE, AND SIX SHOULD BE ORDERED
    PURSUANT TO FED. R. CRIM. P. 8(b) FOR IMPROPER JOINDER
    AND MR. KUKUSHKIN TRIED ALONE ███████████████
    ███████████████████████ ......................................5

   A. Introduction ....................................................................................................5

   B. The Applicable Law .......................................................................................6

   C. The Foreign Donor Scheme Should Be Severed from the Straw Donor Scheme ...........8

   D. The Foreign Donor Scheme Should Be Severed from the Fraud Guarantee Scheme ....11

   E. Conclusion ....................................................................................................13

   F. Mr. Kukushkin Joins in the Severance Motions of His Co-Defendants to the
     Extent Not Inconsistent Herewith ..................................................................14

POINT TWO

    THE COURT SHOULD SEVER MR. KUKUSHKIN TO PRESERVE HIS
    CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY ASSURING HE WILL BE
    ABLE TO PRESENT CRITICAL EXCULPATORY EVIDENCE NEEDED TO
    MEET THE CHARGES AGAINST HIM ..............................................................15

   A. Introduction ..................................................................................................15

   B. Overview of the Applicable Legal Considerations.........................................18

   C. The Factors to Consider in Exercising Discretion Whether to Sever ............19

      1. Is the Evidence Favorable and Exculpatory?.............................................19

2. Is the Evidence Cumulative? ...................................................................19

3. Is the Evidence Subject to Significant Impeachment?.............................20

4. Does the Value of Judicial Economy Outweigh the Benefits of Severance Here? ....21

5. Will ████████████ Testify at a Separate Trial? .................................22

6. How Can the District Court Assure that the Testimony Will be Available?.............24

D. Conclusion............................................................................................26

POINT THREE

SEVERANCE OF MR. KUKUSHKIN'S TRIAL SHOULD BE ORDERED
PURSUANT TO FED. R. CRIM. P. 14 TO PROTECT HIS CONSTITUTIONAL
RIGHT TO A FAIR TRIAL ...........................................................................27

A. Introduction ........................................................................................27

B. The Applicable Law .............................................................................27

C. Mr. Kukushkin Will Be Unfairly Prejudiced by a Joint Trial .....................29

1. Disparities in Proof..............................................................................29

2. Admission of Evidence at a Joint Trial That is Inadmissible at a Separate Trial.........31

3. Antagonistic Defenses.........................................................................34

D. Limiting Instructions Will Not Cure the Prejudice ..................................37

E. Conclusion ...........................................................................................38

F. Mr. Kukushkin Joins in the Severance Motions of His Co-Defendants to the
Extent Not Inconsistent Herewith............................................................38

POINT FOUR

THE COURT SHOULD ORDER A DEPOSITION OF FOREIGN
NATIONAL-1 PURSUANT TO FED. R. CRIM. P. 15(a).....................................39

A. Introduction .........................................................................................39

B. The Applicable Law ..............................................................................39

1. The Witness is Unavailable ..................................................................41

2. The Testimony is Material ....................................................................42

3. The Testimony is Necessary to Prevent a Failure of Justice .....................43

C. Conclusion ...........................................................................................43

POINT FIVE

THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR
INVASION OF MR. KUKUSHKIN'S ATTORNEY-CLIENT PRIVILEGE.......................44

POINT SIX

    ALL EVIDENCE OBTAINED AS A RESULT OF SEARCH WARRANT
    APPLICATIONS WHICH CONTAINED, REFERENCED AND/OR QUOTED
    FROM MR. KUKUSHKIN'S ATTORNEY-CLIENT PRIVILEGED
    COMMUNICATIONS OR WAS OBTAINED THROUGH THE FRUITS THEREOF
    SHOULD BE SUPPRESSED ................................................................................ 45

POINT SEVEN

    THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED DUE TO
    INFIRMITIES, DEFICIENCIES, AND IRREGULARITIES IN THE GRAND JURY
    PROCEEDINGS WHICH VIOLATE MR. KUKUSHKIN'S CONSTITUTIONAL
    RIGHTS ............................................................................................................ 47

POINT EIGHT

    THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR SELECTIVE
    PROSECUTION/SELECTIVE ENFORCEMENT OR IN THE ALTERNATIVE THE
    GOVERNMENT SHOULD BE COMPELLED TO PRODUCE DISCOVERY
    WITH RESPECT TO THE DEFENDANTS' SELECTIVE
    PROSECUTION/SELECTIVE ENFORCEMENT CLAIMS ................................ 48

POINT NINE

    MR. KUKUSHKIN SEEKS LEAVE TO JOIN IN ALL MOTIONS OF HIS CO-
    DEFENDANTS THAT INURE TO HIS BENEFIT .............................................. 49

POINT TEN

    MR. KUKUSHKIN SEEKS LEAVE AND RESERVES ALL RIGHTS TO
    FILE ADDITIONAL MOTIONS ......................................................................... 50

CONCLUSION ...................................................................................................... 50

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blissett v. Lefevre*,
924 F. 2d 434 (2d Cir. 1991).................................................................25

*Bruton v. United States*,
391 U.S. 123 (1968)...........................................................................27

*Ko v. Burge*,
2008 U.S. Dist. LEXIS 15484 (S.D.N.Y. Feb. 25, 2008)......................26

*Kotteakos v. United States*,
328 U.S. 750 (1946)...........................................................................12

*Simmons v. United States*,
390 U.S. 377 (1968)...........................................................................25

*In re Three Grand Jury Subpoenas*,
847 F.2d 1024 (2d Cir. 1988)..............................................................25

*United States v. Abrams*,
539 F. Supp. 378 (S.D.N.Y. 1982) ......................................................28

*United States v. Andrews*,
2013 U.S. Dist. LEXIS 169745 (N.D. W. Va. 2013)........................36-37

*United States v. Attanasio*,
870 F.2d 809 (2d Cir. 1989)..........................................................7, 11, 12

*United States v. Bahadar*,
954 F. 2d 821 (2d Cir. 1992)...............................................................25

*United States v. Banki*,
2010 U.S. Dist. LEXIS 35416 (S.D.N.Y. 2010).....................................40

*United States v. Bellomo*,
954 F. Supp. 630 (S.D.N.Y. 1997) .......................................................28

*United States v. Branker*,
395 F.2d 881 (2d Cir. 1968).............................................................29, 31

*United States v. Bronston*,
321 F. Supp. 1269 (S.D.N.Y. 1971).....................................................41

*United States v. Camacho*,
939 F. Supp. 203 (S.D.N.Y. 1996) .....................................................7, 8

*United States v. Cardascia*,
951 F.2d 474 (2d Cir. 1991)................................................................31

*United States v. Carpentier*,
689 F.2d 21 (2d Cir. 1982)..................................................................35

*United States v. Carrozza,*
   728 F. Supp. 266 (S.D.N.Y. 1990), *aff'd*, 956 F.2d 1160 (2d Cir. 1992) ................... 11-12, 13

*United States v. Chusid,*
   2000 U.S. Dist. LEXIS 14007 .................................................................................40

*United States v. Cohen,*
   260 F.3d 68 (2d Cir. 2001)......................................................................................39

*United States v. DePalma,*
   466 F. Supp. 920 (S.D.N.Y. 1979) .........................................................................22

*United States v. Des Marteau,*
   162 F.R.D. 364 (M.D. Fla. 1995)............................................................................40

*United States v. DeSena,*
   287 F.3d 170 (2d Cir. 2002)....................................................................................19

*United States v. Diaz,*
   176 F.3d 52 (2d Cir. 1999)......................................................................................18

*United States v. DiNome,*
   954 F.2d 839 (2d Cir. 1992)....................................................................................30

*United States v. Drogoul,*
   1 F.3d 1546 (11th Cir. 1993) ..................................................................................41

*United States v. Dunseath,*
   1999 U.S. Dist. LEXIS 3399 (S.D.N.Y. 1999).......................................................40

*United States v. Escobar,*
   1991 U.S. Dist. LEXIS 12898 (S.D.N.Y. 1991)....................................................23

*United States v. Feyrer,*
   333 F.3d 110 (2d Cir. 2003)....................................................................................37

*United States v. Finkelstein,*
   526 F.2d 517 (2d Cir. 1975)...............................................................................21, 22

*United States v. Freedman,*
   317 Fed. Appx. 22 (2d Cir. 2008)...........................................................................23

*United States v. Gallo,*
   1999 U.S. Dist. LEXIS 103 (S.D.N.Y. 1999)......................................7, 11, 13, 28

*United States v. Gallo,*
   668 F. Supp. 736 (E.D.N.Y. 1987), *aff'd*, 863 F.2d 185 (2d Cir. 1988)...............28, 29, 34, 37

*United States v. Gatien,*
   1997 U.S. Dist. LEXIS 16366 (E.D.N.Y. 1997)....................................................28

*United States v. Geddes,*
   2015 U.S. Dist. LEXIS 44809 (D. Conn. 2015) .....................................................8

*United States v. Gentile,*
   60 F.R.D. 686 (E.D.N.Y. 1973)...............................................................................8

*United States v. Giraldo*,
  859 F. Supp. 52 (E.D.N.Y. 1994), *aff'd in part rev'd in part*, 80 F.3d 667 (2d
  Cir. 1996) .................................................................................................................8, 9

*United States v. Gonzalez*,
  2008 U.S. Dist. LEXIS 64854 (S.D.N.Y. 2008) ....................................................23

*United States v. Greenfield*,
  2001 U.S. Dist. LEXIS 16628 (S.D.N.Y. 2001) .......................................................7

*United States v. Grossman*,
  2005 U.S. Dist. LEXIS 3135 (S.D.N.Y. 2005) ......................................................41

*United States v. Gruttadauria*,
  439 F. Supp. 2d 240 (E.D.N.Y. 2006) ...................................................................11

*United States v. Harris*,
  707 F.2d 653 (2d Cir. 1983).................................................................................25

*United States v. Haynes*,
  16 F.3d 29 (2d Cir. 1994)......................................................................................35

*United States v. Jackson*,
  2005 U.S. Dist. LEXIS 27793 (S.D.N.Y. 2005) ..............................................19, 23

*United States v. Johnpoll*,
  739 F.2d 702 (2d Cir.), *cert. denied,* 469 U.S. 1075 (1984)..................39, 40, 41, 42

*United States v. Kelly*,
  349 F.2d 720 (2d Cir. 1965)............................................................................29, 30

*United States v. Killeen*,
  1998 U.S. Dist. LEXIS 17134 (S.D.N.Y. 1998)..............................................7, 8, 9

*United States v. Korolkov*,
  870 F. Supp. 60 (S.D.N.Y. 1994) ....................................................................39, 42

*United States v. Kouzmine*,
  921 F. Supp. 1131 (S.D.N.Y. 1996).................................................................7, 8

*United States v. Lech*,
  161 F.R.D. 255 (S.D.N.Y. 1995) (Sotomayor, J.) .....................................7, 8, 9, 13

*United States v. Little*,
  2014 U.S. Dist. LEXIS 60840 (S.D.N.Y. 2014) ....................................................41

*United States v. Menashe*,
  741 F. Supp. 1135 (S.D.N.Y. 1990)........................................................................9

*United States v. Moon*,
  1988 U.S. Dist. LEXIS 9306 (N.D.N.Y. 1988) ................................................11, 12

*United States v. Morelli*,
  2005 U.S. Dist. LEXIS 5384 (S.D.N.Y. 2005) ......................................................21

*United States v. Moten*,
  564 F.2d 620 (2d Cir. 1977)..................................................................................28

*United States v. Odom*,
    888 F.2d 1014 (4th Cir. 1989) ...................................................................36

*United States v. Ohle*,
    678 F. Supp. 2d 215 (S.D.N.Y. 2010) ......................................................6, 9

*United States v. Ong*,
    541 F.2d 331 (2d Cir. 1976)........................................................................33

*United States v. Oudovenko*,
    2001 U.S. Dist. LEXIS 2549 ......................................................................40

*United States v. Papadakis*,
    510 F.2d 287 (2d Cir. 1975).........................................................................6

*United States v. Praetorius*,
    462 F. Supp. 924 (E.D.N.Y. 1978) .............................................................37

*United States v. Ramos*,
    346 F. Supp. 2d 567 (S.D.N.Y. 2004) ........................................................28

*United States v. Reddy*,
    2002 U.S. Dist. LEXIS 10795 (S.D.N.Y. 2002)..........................................28

*United States v. Reinhold*,
    994 F. Supp. 194 (S.D.N.Y. 1998) ...............................................................7

*United States v. Salerno*,
    937 F. 2d 797 (2d Cir. 1991), *rev'd on other grounds by United States v.
    Salerno*, 505 U.S. 317 (1992) ....................................................................25

*United States v. Santiago*,
    174 F. Supp. 2d 16 (S.D.N.Y. 2001)...........................................................28

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007)........................................................................7, 8

*United States v. Shkreli*,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ........................................................36

*United States v. Shteyman*,
    2011 U.S. Dist. LEXIS 55202 (E.D.N.Y. 2011)..........................................24

*United States v. Shuford*,
    454 F.2d 772 (4th Cir. 1971) .....................................................................21

*United States v. Sindona*,
    636 F.2d 792 (2d Cir. 1980)..................................................................40, 42

*United States v. Singleton*,
    460 F.2d 1148 (2d Cir.1972), *cert. denied*, 410 U.S. 984 (1973).............39

*United States v. Stein*,
    428 F. Supp. 2d. 138 (S.D.N.Y. 2006).........................................................6

*United States v. Stella*,
    1990 U.S. Dist. LEXIS 11267 (S.D.N.Y. 1990)..........................................23

*United States v. Sun Myung Moon,*
    93 F.R.D. 558 (S.D.N.Y. 1982) ...........................................................41

*United States v. Taylor,*
    562 F.2d 1345 (2d Cir.), *cert. denied*, 434 U.S. 853 (1977) .................18

*United States v. Turbide,*
    558 F.2d 1053 (2d Cir. 1977) ...............................................................6

*United States v. Turkish,*
    623 F.2d 769 (2d. Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981) ........26

*United States v. Turoff,*
    853 F.2d 1037 (2d Cir. 1988) ...............................................................6

*United States v. Upton,*
    856 F. Supp. 727 (E.D.N.Y. 1994) ................................................. 30-31

*United States v. Villar,*
    568 F. Supp. 2d 429 (S.D.N.Y. 2008) ..................................................40

*United States v. White,*
    887 F.2d 267 (D.C. Cir. 1989) ............................................................33

*United States v. Yaron,*
    2011 U.S. Dist. LEXIS 84109 (S.D.N.Y. 2011) ................................7, 8

*Untied States v. Guillen-Rivas,*
    950 F. Supp. 2d 446 (E.D.N.Y. 2013) ..................................................28

*Zafiro v. United States,*
    506 U.S. 534 (1993) .............................................................................27

**Statutes**

28 U.S.C. §1783......................................................................................40, 41

**Other Authorities**

Fifth Amendment ..................................................................... *passim*

Sixth Amendment .................................................................... *passim*

F.R.E. Rule 404(b) ..........................................................................31

F.R.E. Rule 801(d)(2) ......................................................................37

F.R.E. Rule 804 ...............................................................................40

FED. R. CRIM. P. Rule 7(f) ...............................................................10

FED. R. CRIM. P. Rule 8 ........................................................... *passim*

FED. R. CRIM. P. Rule 14........................................27, 29, 34, 38

FED. R. CRIM. P. Rule 15......................................39, 40, 42, 43

FED. R. CRIM. P. Rule 17..................................................................40

## PRELIMINARY STATEMENT

Mr. Kukushkin respectfully submits this Memorandum of Law in support of his pretrial motions to:

1.  Sever Counts Four, Five and Six of the Superseding Indictment ████████ ████████████████████

2.  Hold a foreign deposition of Foreign National-1;

3.  Dismiss the Superseding Indictment based the government's breach of Mr. Kukushkin's, Mr. Fruman's and others' attorney-client privilege or for discovery regarding same and recusal of the government's prosecution team;

4.  Suppress the fruits of the numerous searches and seizures conducted pursuant to each and every search warrant, the applications for which cited, referenced, or otherwise relied upon Mr. Kukushkin's, Mr. Fruman's and others' attorney-client privileged communications, including but not limited to the warrants dated October 22, 2019 ████████████████████ November 13, 2019 (for Mr. Kukushkin's iPhone), and May 4, 2020 (████████████████████);

5.  Dismiss the Superseding Indictment for selective prosecution/selective enforcement or for discovery regarding same;

6.  Join in the motions of Lev Parnas and Igor Fruman to the extent that they inure to his benefit and are not inconsistent herewith;

7.  File additional motions based on any new discovery produced or evidence that comes to light; and

8.  Grant such other and further relief as the Court deems just and proper.

For the reasons that follow, as well as those contained in memoranda of law submitted by Lev Parnas and Igor Fruman, the aforementioned motions should be granted, or in the alternative hearings upon them conducted and discovery ordered.

## STATEMENT OF FACTS

### A. Personal and Professional Background

Andrey Kukushkin is a naturalized United States citizen of Ukrainian descent.  He resides in California, as do his parents and brother.  Mr. Kukushkin holds degrees in industrial engineering and finance.  A former investment manager and finance professional, Mr.

Kukushkin now works in the emerging lawful cannabis industry.  Foreign National-1 is a

███████████████████████████████████████████████████ Foreign

National-1 is ████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████ Mr. Kukushkin operates,

manages, is associated with and/or is employed by various lawful businesses which operate in

several capacities in the lawful cannabis market in California and hold various cannabis-related

licenses.  Mr. Kukushkin has no prior business dealings with Messrs. Parnas, Fruman, and

Correia.  Mr. Kukushkin is not active politically.

**B.** **The Superseding Indictment**

The seven count Superseding Indictment, returned with such fanfare and press, charges

Mr. Kukushkin, along with three other defendants including Lev Parnas and Igor Fruman,[1] with

conspiring to circumvent the campaign finance laws against foreign influence by engaging in a

scheme purportedly to funnel foreign money to candidates for federal and State office in order to

gain influence with officials and candidates as to policies and licensing decisions that would

benefit a joint cannabis business venture.  Dkt. 120, ¶ 20.  Foreign National-1 purportedly

provided the funding.  *Id.* at ¶ 48(a), (b).  It is further alleged that in order to conceal the true

source of contributions and donations funded with foreign money, Messrs. Kukushkin, Parnas,

Fruman, and others caused the contributions and donations to be made in the names of Messrs.

Fruman and Parnas, rather than in the name of Foreign National-1, who, according to the

government, was the true source of those contributions and donations.  *Id*. at ¶ 20.  Mr.

---

[1] Also charged is David Correia.  As the Court is aware, Mr. Correia has entered a guilty plea to Counts three and seven of the Superseding Indictment.  Mr. Kukushkin is not charged in either count and neither relates to the allegations against Mr. Kukushkin.

Kukushkin is also charged substantively, along with Messrs. Parnas and Fruman, with aiding and abetting the making of contributions with foreign monies.  *Id.* at ¶ 52.

The Superseding Indictment separately charges two unrelated and unconnected schemes. Mr. Kukushkin is charged in neither.  The first alleges a scheme whereby Messrs. Fruman and Parnas sought to advance their personal financial interests and promote an energy import-export business, Global Energy Producers ("GEP"), that they were in the process of launching.  *Id.* at ¶ 13.  The pair is alleged to have used proceeds from a personal loan taken by Mr. Fruman, funneled it through various bank accounts and then into an account held by GEP in order to hide the true source of the funds, and then used those funds to make political contributions and donations in the name of GEP, instead of Mr. Fruman, the purported true source of the money, in order to falsely make it appear that GEP had made the contributions and thereby enhance its reputation and gain political influence (the "Straw Donor Scheme").  *Id.* at ¶ 15.  As noted, Mr. Kukushkin is not charged in connection with this scheme, nor is he alleged to have had any involvement whatsoever or even to have had any knowledge of it.

The second alleges that Messrs. Parnas and Correia conspired to defraud multiple victims of approximately $2 million by inducing them to invest that money in a company, Fraud Guarantee, based on materially false and misleading representations (the "Fraud Guarantee Scheme").  *Id.* at ¶ 26.  Specifically, the pair purportedly promised that investors' monies would be used solely for legitimate business expenses of Fraud Guarantee when in fact they were used largely to pay for personal expenses of Messrs. Parnas and Correia.  *Id.* at ¶ 26.  Mr. Kukushkin is not charged in connection with this scheme, nor is he alleged to have had any involvement whatsoever or even to have had any knowledge of it.

C. **The Unique Legal Issues Presented by this Case**

1. **The Overwhelming Exculpatory Evidence**

This case presents a myriad of complex and unique legal issues. Among them is the rare circumstance in which a charged defendant, here Mr. Kukushkin, is faced with the prospect of not being able to mount a defense. *Brady* evidence reluctantly disclosed by the government shows that ████████████     ████████████     Mr. Kukushkin was not involved in a foreign donor scheme. *See* Ex. A, B, and C.[2]  Indeed, that there was no foreign donor scheme. *Id.*  Yet Mr. Kukushkin will be unable to vindicate his rights, thus denying him constitutional due process, solely by reason of the fact that every single witness with exculpatory information ████████████████████; out of the country; or some combination thereof. As things stand currently, without Court intervention, each of these witnesses and their exculpatory testimony is unavailable to Mr. Kukushkin, leaving him without critical evidence to contradict the government's claims of his guilt.

2. **The Violation of the Attorney-Client Privilege**

In addition, during the government's grand jury investigations in this matter, it secured and executed approximately 22 search warrants, predominately seeking electronically stored documents, information, and communications, including numerous email accounts. Included among them were search warrants for Mr. Kukushkin's cell phone, iCloud account, and email account. *See* Ex. E and F.  Stored in many, if not all, of those accounts were electronic communications with counsel which fall squarely within the attorney-client privilege held jointly and individually by Messrs. Parnas, Fruman, and Kukushkin, as well as others. In recognition of

---

[2] Unless otherwise indicated, "Ex." references are to the exhibits annexed to the Lefcourt Declaration dated December 1, 2020 ("Lefcourt Decl."), submitted herewith.

this fact, it is our understanding that the government employed a filter team to review these materials before releasing them to the trial team.  Still, some number of privileged communications were in fact released to the trial team and used extensively by the team in its multiple grand jury investigations and at least one presentation.  Moreover, one such communication was quoted in ███████████████████ as well as in numerous search warrant applications.  *See* Ex. D.  Indeed, even after the government was placed on actual notice of the fact that these communications were considered privileged and confidential attorney-client communications – multiple times, by multiple individuals, including counsel – the government continued to use and rely on the email communications, including in support of subsequent search warrant applications, without ever having sought permission to do so, and with full knowledge of the defendants' position and objections.  *See* Lefcourt Decl. ¶¶ 3-30.  The government even went so far as to ███████████████████████████████ ███████  *Id.* at ¶ 26.

## ARGUMENT

### POINT ONE

**A SEVERANCE OF COUNTS FOUR, FIVE, AND SIX SHOULD BE ORDERED PURSUANT TO FED. R. CRIM. P. 8(b) FOR IMPROPER JOINDER AND MR. KUKUSHKIN TRIED ALONE AND AFTER ADJUDICATION OF THE CHARGES AGAINST THE CO-DEFENDANTS**

**A. <u>Introduction</u>**

The Superseding Indictment alleges three distinct schemes in seven counts charging three separate conspiracies.  There is no overarching scheme, conspiracy, or conduct that tie all these counts together.  Nor do they arise out of a common plan or scheme, or even the same series of acts or transactions.  Instead, the allegations can be divided fairly into **three** groups: (i) those charging Messrs. Parnas, Fruman and Correia with the use of personal funds to make corporate

political donations to benefit a liquified natural gas import-export company (counts 1, 2, and 3) (the "Straw Donor Scheme"); (ii) those charging Messrs. Parnas, Fruman, Correia, Kukushkin and at least one other with the undisclosed use of foreign funds to make political contributions in order to secure licenses in various jurisdictions to operate lawful cannabis businesses (counts 4, 5, and 6) (the "Foreign Donor Scheme"); and (iii) a wire fraud scheme that alleges Messrs. Parnas and Correia used false and misleading representations to secure millions of dollars in purported investments in an insurance related business from multiple individuals (count 7) (the "Fraud Guarantee Scheme").  Mr. Kukushkin is charged only in connection with the Foreign Donor Scheme and only in counts four and six; he is not charged in connection with any counts related to the Straw Donor or Fraud Guarantee Schemes.  Nor is there a substantial unity of facts amongst the Foreign Donor, Straw Donor and Fraud Guarantee Schemes.  For that reason, joinder is improper under FED. R. CRIM. P. Rule 8.

### B.  The Applicable Law

Rule 8(a) of the Federal Rules of Criminal Procedure governs joinder of offenses, while Rule 8(b) governs joinder of defendants.  Where, as here, multiple defendants are charged in the same indictment, Rule 8(b) governs any motion for severance.  *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988); *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir. 1975); *United States v. Turbide*, 558 F.2d 1053, 1061 n.7 (2d Cir. 1977) ("the question [in such circumstances] is whether the co-defendants 'participated . . . in the same series of acts or transactions constituting an offense or offenses'") (internal citations omitted); *United States v. Ohle,* 678 F. Supp. 2d 215, 224 (S.D.N.Y. 2010); *United States v. Stein*, 428 F. Supp. 2d 138, 141 (S.D.N.Y. 2006).  Joinder is proper only where the criminal acts of two or more persons "(1) arise out of a common plan or scheme or (2) are unified by some substantial identity of facts or participants".

*United States v. Reinhold*, 994 F. Supp. 194, 197 (S.D.N.Y. 1998) (citing *United States v. Lech*,

161 F.R.D. 255, 256 (S.D.N.Y. 1995) (Sotomayor, J.)).

The law is clear: ". . . two separate transactions do not constitute a 'series' . . . merely

because they are of a similar character or involve one or more common participants". *Lech,*

*supra,* 161 F.R.D. at 256 (internal citations omitted); *see also United States v. Shellef*, 507 F.3d

82, 97 (2d Cir. 2007); *United States v. Greenfield,* 2001 U.S. Dist. LEXIS 16628, *9 (S.D.N.Y.

2001); *United States v. Gallo*, 1999 U.S. Dist. LEXIS 103, *6 (S.D.N.Y. 1999).  Instead, as

noted, joinder is proper only where two or more persons' criminal acts are "unified by some

substantial identity of facts or participants or arise out of a common plan or scheme". *United*

*States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (internal citations omitted); *Shellef*, *supra,*

507 F.3d at 97; *Reinhold*, *supra,* 994 F. Supp. at 197; *Lech, supra,* 161 F.R.D. at 256.  Where, as

here, an indictment alleges multiple, independent conspiracies which merely involve some of the

same actors, or are merely similar in character, joinder is not proper.  *See, e.g., United States v.*

*Yaron,* 2011 U.S. Dist. LEXIS 84109 (S.D.N.Y. 2011) ("similarities between … two

conspiracies are not enough … to satisfy the requirements of joinder under Rule 8(b)"); *United*

*States v. Killeen*, 1998 U.S. Dist. LEXIS 17134, (S.D.N.Y. 1998) (granting severance under Rule

8(b) where defendant was not alleged to have been aware of or participated in other schemes

charged in the indictment); *Lech*, *supra,* 161 F.R.D. at 257 (granting severance to defendant

under Rule 8(b) where he had no involvement in the other schemes charged in the indictment and

only cursory knowledge of them); *United States v. Kouzmine*, 921 F. Supp. 1131, 1133

(S.D.N.Y. 1996) (granting severance under Rule 8(b) where conspiracies alleged were not part of

a single overarching scheme and there existed no identity of participants); *United States v.*

*Camacho*, 939 F. Supp. 203, 209 (S.D.N.Y. 1996) ("temporal and spatial relationships are not

7

sufficient by themselves to establish the linkage necessary to justify joinder"); *United States v. Giraldo*, 859 F. Supp. 52, 54 (E.D.N.Y. 1994) (joinder under Rule 8(b) improper where ". . .there is no suggestion that [the defendants] . . . knew of or were involved in any overall scheme") (internal citations omitted), *aff'd in part rev'd in part*, 80 F.3d 667 (2d Cir. 1996); *United States v. Gentile*, 60 F.R.D. 686, 689 (E.D.N.Y. 1973) (government has obligation to allege more than that offenses are similar in nature or share a common participant where there is no evidence defendants acted in concert or participated in a common scheme or plan).

**C.** **The Foreign Donor Scheme Should Be Severed from the Straw Donor Scheme**

On the face of the Superseding Indictment there is no connection between on the one hand the Foreign Donor Scheme (Counts 4, 5, and 6) and, on the other hand, the Straw Donor Scheme (Counts 1, 2 and 3).[3]  Indeed, other than some defendants being charged in both, there exists only one common thread between the Foreign Donor Scheme and the Straw Donor Scheme, namely vague similarities in the nature of the offenses, which alone is not a proper basis for joinder.  *See Shellef*, *supra*, 507 F.3d at 97 (same or similar character of offenses not sufficient basis for joinder); *see also United States v. Geddes*, 2015 U.S. Dist. LEXIS 44809, *11-20 (D. Conn. 2015); *Yaron, supra*, 2011 U.S. Dist. LEXIS 84109, at *8; *Killeen*, *supra*, 1998 U.S. Dist. LEXIS 17134; *Lech*, *supra*, 161 F.R.D. at 256; *Kouzmine*, *supra*, 921 F. Supp. at 1133; *Camacho, supra*, 939 F. Supp. at 209; *Gentile*, *supra*, 60 F.R.D at 689.  There exists no unanimity of interests, allegations, facts, or evidence, and only minimal similarity in the nature of the offense or alleged perpetrators.

---

[3]  We address separately the improper joinder of the Foreign Donor Scheme and the Fraud Guarantee Scheme.  *See* Section D of Point I *infra*.

As discussed, unrelated conspiracy charges are improperly joined under Rule 8(b) where, as here, there is no allegation of an overlapping conspiracy or scheme.  *See, e.g., Ohle*, *supra,* 678 F. Supp. 2d 215 (severing charges of tax evasion and obstruction and impeding due administration of IRS laws where there was no evidence of a relationship between offenses); *Killeen*, *supra,* 1998 U.S. Dist. LEXIS 17134; *Giraldo*, *supra,* 859 F. Supp. at 54; *Lech*, *supra,* 161 F.R.D. at 257.  In order for joinder of distinct conspiracies to be proper under Rule 8(b), knowledge of an overall common plan must be shared by **all participants**: though one person may treat the separate acts as part of a common scheme, it is not enough if "he is the only one alleged to be aware of it".  *United States v. Menashe*, 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990).

Neither the Superseding Indictment nor any of the discovery reviewed to date suggests that the Foreign Donor and Straw Donor Schemes are related as required by Rule 8(b), in that they share an overall common plan, or arise out of the same series of acts or transactions.  Indeed, quite the opposite is true.  The alleged participants amongst the schemes differ, the manner by which the schemes are alleged to have been carried out differ, the alleged witnesses differ, and the alleged time periods differ, albeit with some overlap.  In fact, the purported schemes relate to different subject matters, have different alleged goals, and do not even share the same means.  Nor is there any evidence whatsoever or even allegations linking Mr. Kukushkin to any wrongdoing in connection with the Straw Donor Scheme or demonstrating that he had knowledge of this alleged scheme.

For example, Mr. Kukushkin is not charged in connection with the Straw Donor Scheme.  Further, while the Straw Donor Scheme relates to alleged efforts by Messrs. Parnas, Fruman, and others to gain political influence to benefit a new foray into the international import-export of liquified natural gas to Ukraine, the Foreign Donor Scheme does not.  Rather, the government

contends that the Foreign Donor Scheme relates to efforts by Messrs. Kukushkin, Parnas, Fruman, and others to obtain licenses in various states throughout the United States to lawfully engage in the cannabis business, a business in which Mr. Kukushkin was already entrenched (all unrelated to liquified natural gas, international import-export, or Ukraine).  In fact, Mr. Kukushkin has no relationship with, connection to, or interest in GEP, the entity alleged to have made the straw donations in the Straw Donor Scheme, and GEP did not make any of the allegedly offending contributions which are the subject of the Foreign Donor Scheme counts. Nor were Mr. Kukushkin or Foreign National-1 the source of funds for any of the alleged straw donations at issue in the Straw Donor Scheme.  Indeed, to the best of our knowledge, the contributions at issue in the Straw Donor Scheme were to political entities and individuals with no connection to the alleged Foreign Donor Scheme.[4]  Finally, the Foreign Donor Scheme is alleged to have occurred between June 2018 and April 2019.  *See* Dkt. 120, ¶¶ 20, 47, 52.  In contrast, the Straw Donor Scheme is alleged to have occurred over a period of time between March 2018 and November 2018.  *Id.*, ¶ 40.  Thus, from the face of the Superseding Indictment, it is clear that the Foreign Donor Scheme and the Straw Donor Scheme, while bearing some

---

[4] Only two specific contributions totaling $20,000 have been identified by the government in the Superseding Indictment in connection with the Foreign Donor Scheme.  Dkt. 120, ¶ 24.  Given that Messrs. Parnas and Fruman also are charged with campaign finance violations separate and distinct from the Foreign Donor Scheme and that they appear to have made numerous contributions to different politicians, candidates, political action committees and independent expenditure committees, unrelated to the alleged Foreign Donor Scheme, Mr. Kukushkin has sought a Bill of Particulars identifying which contributions or donations the government believes were made using foreign funds as part of the Foreign Donor Scheme.  *See* Ex. H.  The government has refused to provide one but instead has directed counsel to certain discovery materials.  *See* Ex. I.  To the extent the documents are insufficient, counsel seeks leave and reserves the right to file a subsequent motion for a Bill of Particulars pursuant to FED. R. CRIM. P. Rule 7(f).

general similarities, do not derive from the same series of acts or transactions, are not part of a

common plan or scheme, and should be severed pursuant to Rule 8(b).

Furthermore, because the evidence that will be used to prosecute these allegations will

differ considerably, joining these counts will benefit neither judicial efficiency nor economy.

The unavoidable diversity of witnesses and evidence further establish that these counts should

not be joined.  *See, e.g.*, *Gallo*, *supra*, 1999 U.S. Dist. LEXIS 103 at *6 (severing two extortion

conspiracies despite overlap of certain defendants, the victim, and periods of time because there

was no connection between the two); *United States v. Moon*, 1988 U.S. Dist. LEXIS 9306, at *10

(N.D.N.Y. 1988) ("It is equally clear, however, that defendants charged with two separate albeit

similar conspiracies having one common participant are not, without more, properly joined".)

(citations omitted).

In short, it is patently clear that the Foreign Donor Scheme and the Straw Donor Scheme

bear no relationship whatsoever.  Thus, these counts should be severed as improperly joined

pursuant to Rule 8(b), and Mr. Kukushkin tried alone.

### D.  <u>The Foreign Donor Scheme Should Be Severed from the Fraud Guarantee Scheme</u>

Similarly, on the face of the Superseding Indictment, the only connection between the

Foreign Donor and the Fraud Guarantee Schemes is that Messrs. Parnas and Correia are charged

in both.  *See* Dkt. 120.  This, too, is patently insufficient to establish a "substantial identity of

facts or participants" justifying joinder of the offenses.  *See Attanasio*, *supra,* 870 F.2d at 815;

*United States v. Gruttadauria,* 439 F. Supp. 2d 240, 252 (E.D.N.Y. 2006) (severance granted

where only common thread was single defendant charged with all conspiracies, but where

conspiracies were unrelated by facts or participants and did not arise out of a common plan or

scheme); *United States v. Carrozza*, 728 F. Supp. 266, 270 (S.D.N.Y. 1990) ("the mere existence

of similarities between some of the actors … will not suffice" for joinder under Rule 8(b)), *aff'd*,

956 F.2d 1160 (2d Cir. 1992).  Indeed, as discussed, joinder of multiple defendants and offenses

is impermissible even where the distinct crimes or conspiracies are of the same or similar nature,

if the only nexus among them lies in the fact that some number of people participated in all.

*Kotteakos v. United States*, 328 U.S. 750, 773 (1946) (joining crimes of same nature

impermissible "when the only nexus among them lies in the fact that one man participated in

all"); *Attanasio*, *supra,* 870 F.2d at 815; *see also Moon, supra,* 1988 U.S. Dist. LEXIS 9306, at

*10.  But not even similarities in the nature of the offenses exist with respect to the Foreign

Donor Scheme and the Fraud Guarantee Scheme.

　　　　Except for the coincidence that Messrs. Parnas and Correia are charged in both the

Foreign Donor Scheme and the Fraud Guarantee Scheme, nothing in the Superseding Indictment

links the two schemes.  *See* Dkt. 120 ¶¶ 20-25, 26-38, 46-48, 51-52, 53-54.  On the contrary,

both the general and specific nature of the allegations are wholly distinct – federal campaign

finance violations as opposed to a scheme to defraud investors of millions of dollars.  The goal of

each is wholly unrelated – securing political influence to benefit a lawful cannabis business (*id.*

at ¶ 20) versus making materially false representations to secure money to pay for personal

expenses (*id.* at ¶ 26).  The manner by which the two schemes are alleged to have been caried out

differ – making political donations using foreign money (*id.* at ¶ 20) as compared to lying to

obtain approximately $2 million from various individuals (*id.* at ¶ 26).  So too is the time period

different – late 2012 through mid-2019 (Dkt. 120, ¶¶ 26, 54) as opposed to June 2018 through

April 2019 (*id.* at ¶¶ 20, 47, 52), albeit with some slight overlap.  Moreover, the witnesses and

documentary evidence admissible and relevant as to each scheme are different, as well.  In fact, a

trial of the Foreign Donor Scheme will be dominated by documentary evidence consisting of

chats, credit card and bank records of FD Import & Export, and campaign contribution records. A trial of the Fraud Guarantee Scheme, on the other hand, will involve personal financial records of Messrs. Parnas and Correia, business and financial records of Fraud Guarantee, and live witness testimony of alleged victims.

In addition, as with the Straw Donor Schemes, because of the disparity in evidence necessary to prosecute each of the alleged schemes, joinder will benefit neither judicial efficiency nor economy - just the opposite. But more to the point, given the unavoidable diversity of witnesses and evidence, these counts should not be joined. *See, e.g.*, *Gallo*, 1999 U.S. Dist. LEXIS 103, at *6.

### E.   Conclusion

Simply put, the government has cobbled together a Superseding Indictment containing distinct and disjointed conspiracies and cannot make the requisite showing for joinder under Rule 8(b). There is not even any claim, and certainly no evidence, establishing that these alleged conspiracies are part of a single, unifying plan or scheme or that there is a substantial identity of facts or participants permitting joinder. Counts Four, Five, and Six of the Superseding Indictment, which together comprise the Foreign Donor Scheme, bear no relationship to and thus are not properly joined with the remaining counts in the Superseding Indictment. Where, as here, an indictment alleges multiple, independent conspiracies involving some of the same actors, joinder is not proper. *Carrozza*, *supra,* 728 F. Supp. at 270; *see also Lech*, *supra,* 161 F.R.D. at 257. Accordingly, Counts Four, Five and Six should be severed pursuant to Rule 8(b) and Mr. Kukushkin tried alone.

### F. Mr. Kukushkin Joins in the Severance Motions of His Co-Defendants to the Extent Not Inconsistent Herewith

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced by Messrs. Parnas and Fruman in support of their motions to sever either or both the Straw Donor and Fraud Guarantee Schemes from the Foreign Donor Scheme, to the extent they inure to his benefit and are not inconsistent herewith.

## POINT TWO

## THE COURT SHOULD SEVER MR. KUKUSHKIN TO PRESERVE HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY ASSURING HE WILL BE ABLE TO PRESENT CRITICAL EXCULPATORY EVIDENCE NEEDED TO MEET THE CHARGES AGAINST HIM

### A. **Introduction**

This case is unique for many reasons.  Key among them is the fact that there are multiple individuals who can provide exculpatory evidence in support of Mr. Kukushkin's defense. ██

██████████████████████████████████████████████ which are material to the allegations in the Superseding Indictment and which are favorable or exculpatory to Mr. Kukushkin.  *See* Ex. A, B, C.  Each has ████████ ████████████████████ However, there are both practical and legal impediments to calling these critical witnesses at a joint trial. ████████████████ ██████████████████████████████████ ██████████████████████████ Without court intervention, at a joint trial, Mr. Kukushkin will be left without critical evidence needed to mount a defense.  The Court, however, can take steps to assist Mr. Kukushkin and assure he is provided a constitutionally fair and just trial.  Severance ████████████████████ and a trial of Mr. Kukushkin alone ██████████████████████████

Further explication of the charges and available evidence is necessary to understand just how critical ████████ evidence is to Mr. Kukushkin.  Reduced to its core, the conspiracy alleged in the Superseding Indictment is a scheme to defraud the United States by funding campaign contributions with foreign monies. The gravamen of the case against Mr. Kukushkin is that he conspired to circumvent the federal campaign finance laws against foreign influence by engaging in a scheme purportedly to funnel foreign money to candidates to secure

15

licensing decisions and policies that would benefit a joint cannabis business venture, and that to

conceal the true source of contributions and donations funded with foreign money, Messrs.

Kukushkin, Parnas, Fruman, and others caused the contributions and donations to be made in the

names of Messrs. Fruman and Parnas, rather than in the name of Foreign National-1, the true

source of the contributions according to the government.  Dkt. 120, ¶ 20.

The only purportedly "direct" evidence are chats between Messrs. Kukushkin, Parnas,

Fruman, and Correia and Foreign National-1, as well as financial records.

███████████████████████████ four separate individuals, █████████

████████████████████████ for various reasons, no such conspiracy existed.

More specifically. ████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████

Similarly, and consistent with ███████████████████

████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

██████████████████████████████████



In other words, ████████████████████ ████████████████████

scheme the government believes existed did not in fact exist.  Mr. Kukushkin needs ████

████████████████.[5]  The evidence is not cumulative and calling one of these

witnesses would not be sufficient.  Without the testimony of each, Mr. Kukushkin is both

materially disadvantaged and deprived of his Sixth Amendment right to obtain evidence on his

own behalf. The only practical way of obtaining that testimony would be at a separate trial ████

████████████████████████.

### B.  Overview of the Applicable Legal Considerations

Notwithstanding the preference for joint trial of defendants who are indicted together,

severance is of right where "denial of the motion [would] cause[] substantial prejudice. . . so

severe as to amount to a denial of a constitutionally fair trial".  *United States v. Diaz*, 176 F.3d

52, 102 (2d Cir. 1999).

The Sixth Amendment guarantees a defendant the right "to have compulsory process for

obtaining witnesses in his favor" and, of course, "encompasses the right to compel the attendance

of witnesses favorable to one's defense".  *See, e.g., United States v. Taylor*, 562 F.2d 1345,

1361-62 (2d Cir.), *cert. denied*, 434 U.S. 853 (1977).  We respectfully submit that where there is

a conflict between the preference for joint trials and the constitutional rights of Mr. Kukushkin,

Mr. Kukushkin's rights must take precedence.

Although this may seem hyperbolic, we have not located any case in which all

exculpatory evidence needed to mount a defense is known and provided to the government and

beyond the reach of the defendant because it is in the hands of ████████████████.

---

[5] ████████████████ as things stand now, ████████████ also is unavailable to
Mr. Kukushkin at trial.

██████████████████. This Court should take the steps necessary to assure Mr. Kukushkin is not denied his Sixth Amendment right to use such compelling evidence.

### C. The Factors to Consider in Exercising Discretion Whether to Sever

#### 1. Is the Evidence Favorable and Exculpatory?

To determine whether a defendant's Sixth Amendment rights are threatened by the inability to secure the testimony of a witness, a defendant must show the witness would have "favorable evidence which [is] neither cumulative nor irrelevant". *United States v. DeSena*, 287 F.3d 170, 176 (2d Cir. 2002) (*quoting Singleton v. Lefkowitz*, 583 F.2d 618, 623 (2d Cir. 1978)). The movant must do so without reliance on "conclusory statements merely labelling the proffered testimony as exculpatory". *United States v. Jackson*, 2005 U.S. Dist. LEXIS 27793, at *5 (S.D.N.Y. 2005), *quoting United States v. Bari*, 750 F.2d 1169, 1177-78 (2d Cir. 1984). That Mr. Kukushkin can certainly do.

There can be no doubt that the evidence Mr. Kukushkin seeks to compel is powerful favorable evidence, unavailable from any other witness. *See* Section A, Point Two, *supra*; *see also* Ex. A, C.

#### 2. Is the Evidence Cumulative?

██████████████████████████ is not cumulative; rather, it is testimony that cannot be obtained from any other sources.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████ each

individual has his own understanding of facts, intent, and interests, many of which we submit are divergent but all of which are material and favorable to Mr. Kukushkin. In other words, although there may be some overlap, each ███████████ holds knowledge and evidence that is unique and distinct. But all of which is crucial to Mr. Kukushkin's defense.

### 3. Is the Evidence Subject to Significant Impeachment?

Nor is the testimony likely to be subjected to effective impeachment. While the government will likely urge the jury to conclude that Mr. Kukushkin "knew what was going on" and knowingly and intentionally conspired to violate federal campaign finance laws, the fact that he had no knowledge of who made donations or how they were made; that the monies were used for personal and unrelated business expenses ██████████ that ████████████ did not believe the contribution list, central to the government's allegations and theory of the case, to be real; ████████ never intended to make donations consistent therewith; ██████████ did not make donations consistent therewith, is powerful evidence to the contrary. Nothing that has been produced in discovery would warrant a conclusion that ████████████████████████████

████████████████████████████████████████████

██████████████████████████████ .

████████████████████████████████████████

████████████████████████████████████

████████████████████████████ At a separate trial, no such argument can be made. Moreover, to the extent the testimony of ██████████████████████

███████████████████████████████████████████

███████████████████████████████████

**4.   Does the Value of Judicial Economy Outweigh the Benefits of Severance Here?**

Judicial economy will, of course, always weigh against severance and Mr. Kukushkin does not attempt to minimize the strain on precious resources his application will require. However, some considerations weigh in Mr. Kukushkin's favor.  For example, the government and the Court have ample time to prepare for separate proceedings.  Mr. Kukushkin has filed this motion months before trial, rather than on the eve of trial or during the trial.  And, we submit, a three-defendant trial amid the COVID-19 pandemic, assuming it were to occur then, will be more costly, less efficient, and more complicated logistically than a single defendant trial.

█████████████████████████████████████████████████

███████████████.  A separate trial of Mr. Kukushkin would not be a lengthy proceeding, probably only a few days, while a joint trial would be significantly longer.  As the Second Circuit observed in *Finkelstein*, "duplication of proof is often inevitable in situations meriting separate trials.  The counter-argument of judicial economy is, indeed, a serious consideration, but by itself does not foreclose further inquiry".  *United States v. Finkelstein*, 526 F.2d 517, 524  (2d Cir. 1975); *see also, United States v. Shuford,* 454 F.2d 772, 777, n.5 (4th Cir. 1971) (although judicial economy is relevant "[t]he paramount question … is always whether refusal of the severance impairs the fairness of the trial").  The right of Mr. Kukushkin to mount a defense, combat significant and material mistruths in the charging instrument, and establish his innocence cannot be sacrificed in the name of judicial economy.

In *United States v. Morelli*, 2005 U.S. Dist. LEXIS 5384, at *16 (S.D.N.Y. 2005), the district court granted a severance to a defendant to secure testimony of a co-defendant.  The court's rationale for rejecting "judicial economy" as a basis to deny the motion – that "defendants' alleged crimes are not so intertwined that the same evidence will be used to prove

all of them" – is certainly true here. ███████████████████████████

████████████████████████████████████████████████████ Of

the three remaining counts, Mr. Kukushkin is charged only in two. █████████████

████████████████████████████████ the government would have to

reproduce only a small portion of its case.

Moreover, judicial economy by itself is not an adequate ground to deny a defendant a fair

trial.  "[N]otwithstanding the need for efficiency in judicial administration, **a joint trial is**

**inappropriate if it sacrifices a defendant's right to a fundamentally fair trial**".  *United States*

*v. DePalma*, 466 F. Supp. 920, 923 (S.D.N.Y. 1979), *quoting Shuford*, *supra,* 454 F.2d at 776.

████████████████████████████████████████████████████

unique exculpatory evidence should be sufficient to convince this Court that it should take steps

necessary to assure that Mr. Kukushkin has their testimony.

**5.   Will** ███████████████ **Testify at a Separate Trial?**

As this Court undoubtedly knows, there is a line of cases in the Second Circuit that

considers the interplay between the benefits of a joint trial and a defendant's Sixth Amendment

rights and what a defendant might show to trigger a court's grant of a separate trial.

In *Finkelstein*, *supra,* 526 F.2d 517, the Second Circuit set out four factors a court should

consider.  Three of those – the degree to which the exculpatory testimony would be cumulative;

the likelihood that the testimony would be subject to substantial, damaging impeachment; and

the cost in judicial resources if separate trials were to be held – have been addressed above.

These factors are common to the question of whether a defendant's Sixth Amendment rights are

threatened by a lack of access to evidence in other contexts. ████████████████████

████████████████████████████████████████████████████



[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] If it did, then the Sixth Amendment's construct of "compulsory process" would be meaningless and all that is guaranteed by the Sixth Amendment is the right to put on testimony of a witness who will voluntarily appear.

### 6. How Can the District Court Assure that the Testimony Will be Available?

The question is, will a separate trial here secure the testimony that Mr. Kukushkin needs. The answer is yes.

[REDACTED]

[REDACTED]

[REDACTED]



Alternatively, the Court may order the grant of broader immunity.  The Second Circuit

has recognized the right for the court to "order" the prosecutor to grant defense witness

immunity in extraordinary circumstances.  *Blissett v. Lefevre*, 924 F. 2d 434, 441 (2d Cir. 1991).[7]

The usual concerns attendant to a defense application for defense witness immunity is a fear of

---

[6] *And see In re Three Grand Jury Subpoenas*, 847 F.2d 1024, 1028 (2d Cir. 1988) (extending *Simmons* analysis to protect Fifth Amendment rights); *United States v. Harris*, 707 F.2d 653, 662-663 (2d Cir. 1983) (government not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking *forma pauperis* relief).

[7] Other Second Circuit cases suggest that the district court does not order the government to confer immunity, but presents prosecutors with a series of choices, such as granting immunity or dismissing the indictment.  *See United States v. Salerno*, 937 F. 2d 797, 807 (2d Cir. 1991) ("the government is in no way required to grant use immunity to a witness called by the defense; it is simply left with a series of choices"), *rev'd on other grounds by United States v. Salerno*, 505 U.S. 317 (1992); *United States v. Bahadar*, 954 F. 2d 821, 826 (2d Cir. 1992).

compromising the government's investigation or actual case against that witness. *See, e.g., United States v. Turkish*, 623 F.2d 769, 778 (2d. Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981) ("trial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution"); *Ko v. Burge*, 2008 U.S. Dist. LEXIS 15484, at *48-49 (S.D.N.Y. Feb. 25, 2008) (state's refusal to grant immunity deemed reasonable where there was the possibility of collusion). ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ That hardly disadvantages the government to such an extent as to warrant depriving Mr. Kukushkin of the testimony he needs to defend himself.

These approaches are merely suggestive. They are intended to demonstrate that the Court has at its disposal ways of protecting Mr. Kukushkin's rights without interfering with the government's interests.

### D. Conclusion

There can be no doubt that Mr. Kukushkin has satisfied all the hurdles justifying a *Finkelstein* severance. The evidence he seeks is material, favorable, and not cumulative. The witnesses are ████████████████ unavailable to him ████████████████████ ████████████████ The evidence at issue is not subject to substantial impeachment and Mr. Kukushkin's constitutional rights outweigh any considerations of judicial economy and efficiency. ████████████████████████████████████

████████████████████████████████████

POINT THREE

**SEVERANCE OF MR. KUKUSHKIN'S TRIAL SHOULD BE ORDERED PURSUANT TO FED. R. CRIM. P. 14 TO PROTECT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL**

A. <u>Introduction</u>

In Point One, we detailed why joinder of the Foreign Donor Scheme and the Straw Donor Scheme as well as why joinder of the Foreign Donor Scheme and Fraud Guarantee Scheme are improper and require severance. Even if the Court rejects the argument that severance is mandatory under Rule 8(b), the Court should nevertheless exercise its discretion under FED. R. CRIM P. Rule 14 to grant a severance because Mr. Kukushkin "will be prejudiced by joinder".

B. <u>The Applicable Law</u>

Rule 14 provides in pertinent part:

> [If] the joinder of . . .defendants in an indictment . . .appears to prejudice a defendant . . .the court may . . .sever the defendants' trials or provide any other relief that justice requires.

As the Supreme Court observed in *Zafiro v. United States*, 506 U.S. 534 (1993), while "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," a joint trial should only be employed "where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial". *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968). Thus, severance must be granted where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence". *Zafiro*, *supra,* 506 U.S. at 537, 539.

The determination of whether the prejudice of a joint trial warrants severance is a fact-specific inquiry that necessarily depends upon the circumstances of each case. *See, e.g., Zafiro*, 506 U.S. at 539. In making that determination, a trial court is to consider:

> (1) the number of defendants; (2) the number of counts; (3) the
> complexity of the indictment; (4) the estimated length of trial; (5)
> disparities in the amount or type of proof offered against each
> defendant; (6) disparities in the degrees of involvement by each
> defendant in the overall scheme; (7) possible conflict between
> various defense theories or trial strategies; and (8) prejudice from
> evidence admitted against co-defendants which is inadmissible or
> excluded as to a particular defendant.

*United States v. Gallo,* 668 F. Supp. 736, 749 (E.D.N.Y. 1987), *aff'd,* 863 F.2d 185 (2d Cir.

1988); *United States v. Ramos,* 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004) (citing *Gallo); United*

*States v. Santiago,* 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) (citing *Gallo); United States v.*

*Reddy,* 2002 U.S. Dist. LEXIS 10795, at *32 (S.D.N.Y. 2002); *Untied States v. Guillen-Rivas,*

950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013).  Not one of these factors is dispositive; rather, each

court must decide, on a case-by-case basis, whether severance is appropriate on the facts before

it.  *Gallo*, *supra,* 668 F. Supp. 749.

The ultimate question for a court considering a severance motion is "whether the jury will

be able to 'compartmentalize' the evidence presented to it, and distinguish among the various

defendants in a multi-defendant suit".  *United States v. Abrams*, 539 F. Supp. 378, 381 (S.D.N.Y.

1982); *see also United States v. Moten,* 564 F.2d 620, 627 (2d Cir. 1977).  In the exercise of this

discretion, district courts within this Circuit have granted severance where, as here, the danger to

defendants of prejudice from evidence inadmissible against them impairs their right to a fair trial.

*United States v. Bellomo*, 954 F. Supp. 630 (S.D.N.Y. 1997) (defendants severed from members

of Genovese Organized Crime Family); *United States v. Gatien*, 1997 U.S. Dist. LEXIS 16366

(E.D.N.Y. 1997) (granting a severance where large disparity of evidence and levels of culpability

exists).

### C.  **Mr. Kukushkin Will Be Unfairly Prejudiced by a Joint Trial**[8]

Courts frequently dispose of Rule 14 severance motions by relying on the alleged amelioration of specific instructions to the jury to assure that the jury does not consider against one defendant evidence admitted only against another defendant.  *Gallo*, *supra,* 668 F. Supp. at 752.  Nevertheless, courts also recognize that under particular circumstances, a mere instruction cannot possibly outweigh the potential prejudice in certain circumstances.  *Id.* at 753.  A weighing of the relevant factors demonstrates that Mr. Kukushkin's right to a fair trial would be unduly prejudiced if severance were not granted.

#### 1.  **Disparities in Proof**

First, there are significant disparities between Mr. Kukushkin and certain of his co-defendants in the amount of proof that will be offered against them.  "Where the evidence against the 'minor' defendants is so little or so vastly disproportionate in comparison to that admitted against the remainder of the defendants, the likelihood of spillover prejudice is greatly enhanced".  *Gallo*, *supra,* 668 F. Supp. at 736 (*quoting United States v. Capra*, 501 F.2d 267, 281 (2d Cir. 1974) (internal quotations omitted)).  In such circumstances, a joint trial can be "particularly injurious" to defendants who are charged in only a few of many counts, involved in a small proportion of the evidence, and linked with only a few co-defendants.  *United States v. Branker*, 395 F.2d 881, 888 (2d Cir. 1968); *see also United States v. Kelly*, 349 F.2d 720, 759

---

[8] This Rule 14 severance motion is predicated on, *inter alia,* the potential prejudice of the introduction of evidence in support of counts in which Mr. Kukushkin is not charged and against defendants other than Mr. Kukushkin.  However, we have not yet had an opportunity to review all the evidence provided in discovery and which review we anticipate will provide further arguments in favor of severance.  We seek leave to and reserve the right to supplement this motion as more information is learned.

(2d Cir. 1965).  A joint trial of the Foreign Donor Scheme and the Straw Donor Scheme and Fraud Guarantee Scheme creates such a situation.

Messrs. Parnas and Fruman are both charged in connection with the Straw Donor Scheme which involves, *inter alia,* large donations to independent expenditure committees linked to the current administration, in order to benefit a liquified natural gas import-export business that intended to supply Ukraine.  Dkt. 120, ¶ 14. In addition, Mr. Parnas is charged in the Fraud Guarantee Scheme which involves sweeping allegations of multiple instances of fraud connected to at least seven different alleged victims, and spanning as much as seven years or more, causing approximately $2 million in losses.  *See id.* at ¶ 26.

On the other hand, Mr. Kukushkin is charged only in connection with one alleged scheme, the Foreign Donor Scheme, which involves allegations of political contributions and donations to candidates allegedly using foreign funds in order to secure licenses throughout the country to operate a lawful cannabis business.  *Id.* at 20.  The objects of the Straw Donor and Fraud Guarantee Schemes vary significantly and bear no relationship whatsoever to the Foreign Donor Scheme.  Nor is there a substantial overlap in participants, facts, or evidence.  Thus, a much smaller portion of the trial evidence will relate to those allegations.  Still, at a joint trial, Mr. Kukushkin will be "swamped by this mass of irrelevant evidence" offered against the defendants in the Straw Donor and Fraud Guarantee Schemes.  *United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992).  Permitting the jury to hear such evidence while Mr. Kukushkin sits in court would prejudice him such that "no amount of cautionary instructions could [undo] the harm".  *Kelly, supra,* 349 F.2d at 758.  Indeed, such an "accumulation of evidence during the course of trial places the uninvolved defendants at risk of 'spillover' because the jurors may not be able to prevent themselves from attributing the evidence to the uninvolved defendants".

*United States v. Upton,* 856 F. Supp. 727, 736 (E.D.N.Y. 1994); *see also United States v. Cardascia,* 951 F.2d 474, 483 (2d Cir. 1991) (recognizing that appellants "may have suffered some prejudice when they were forced to sit before the jury for over a month without any evidence being introduced concerning their activities"); *Branker, supra,* 395 F.2d at 888 (2d Cir. 1968) (spillover prejudice a concern for defendants "involved in only a small proportion of the evidence").

If all we were concerned about were the differential in the quantum of evidence, it would be one thing.  But what we are principally concerned about is the likelihood that the jury will use evidence of other schemes and the cumulative bad acts of Messrs. Parnas and Fruman that may be introduced at trial to draw impermissible conclusions against Mr. Kukushkin leading to conviction.  This is particularly true given that while unrelated and not part of a common plan or scheme, the Straw Donor Scheme and the Foreign Donor Scheme have some general similarities in nature.  Although we may wish to argue a lack of indicia of criminal intent, the jury may conclude, based on Messrs. Parnas' and Fruman's alleged involvement in multiple federal campaign finance schemes, that Mr. Kukushkin acted with the requisite intent.[9]  If, by contrast, Mr. Kukushkin or the Foreign Donor Scheme counts were severed, none of this inflammatory and prejudicial evidence would be introduced, the risk would be eliminated, as would at least four counts, and the trial would be significantly more efficient and less prejudicial.

## 2. Admission of Evidence at a Joint Trial That is Inadmissible at a Separate Trial

Second, we anticipate that the government will seek to introduce evidence at a joint trial that would be inadmissible if the Foreign Donor Scheme (or Mr. Kukushkin) were tried

---

[9] Compounding this problem will be any Rule 404(b) evidence that the government might seek to introduce against Messrs. Parnas and/or Fruman which would not be admissible against Mr. Kukushkin and is yet unknown.

separately.  For example, with respect to the Straw Donor Scheme, the government will attempt to introduce evidence that in response to an inquiry by the Federal Election Commission ("FEC") concerning a large donation made by GEP that allegedly was a straw donation, Messrs. Parnas and Fruman and others made or caused to be made materially false and misleading statements. In addition, the government will seek to admit voluminous financial records demonstrating the source and flow of money used for the large donations allegedly made in connection with the Straw Donor Scheme, as well as background information concerning GEP, its formation, activities and the like.  None of this evidence concerns or relates to Mr. Kukushkin.  Nor does it bear on the alleged Foreign Donor Scheme.

Likewise, the government seemingly intends to offer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and extensive financial documents and records which relate solely to the Fraud Guarantee Scheme and thus are irrelevant to the charges against Mr. Kukushkin.  In addition, the government likely will call to testify the multiple victims that allegedly were defrauded of millions of dollars as a result of the Fraud Guarantee Scheme.  There are no victims of the purported Foreign Donor Scheme.  So too, do we anticipate evidence concerning Rudolph Giuliani's connections to Fraud Guarantee will be introduced at any trial involving the Fraud Guarantee Scheme.  Once again, little if any of this evidence would be admissible against Mr. Kukushkin or in connection with the prosecution of the Foreign Donor Scheme.  Allowing it in at a joint trial of Mr. Kukushkin would be inflammatory and highly prejudicial.

Even more problematic is the fact that in an effort to assist Congress' impeachment inquiry, Mr. Parnas waived his attorney-client privilege.  As the government pointed out in response to Mr. Parnas' third application to modify the Protective Order entered in this case to permit the disclosure of the contents of certain of his electronic devices and storage media, Mr.

Parnas possessed and his electronic devices contained documents and communications that fall within the attorney-client privilege Mr. Parnas jointly held with his co-defendants and others. It was on that basis that Messrs. Kukushkin, Fruman, and Correia objected to Mr. Parnas' motion, insisting that their privilege must be maintained. *See* Dkt. 80, 81, 85. Ultimately, Mr. Parnas' motion was granted, but with the express understanding that although Mr. Parnas may have waived privilege with respect to certain documents and communications, he had no right to and could not waive Messrs. Kukushkin's, Fruman's and Correia's or anyone else's attorney-client privilege which would remain intact. So, while the government may be in a position to introduce various attorney-client privileged documents and information as evidence against Mr. Parnas, it has no right to use that evidence against Mr. Kukushkin, who has consistently maintained his privilege, and has not waived it in any manner. In fact, the government trial team is not entitled to possess, view, have knowledge of, or use such evidence in any manner as respects Mr. Kukushkin. Courts have routinely noted that evidentiary determinations can result in prejudice to defendants against whom the proof is inadmissible, such is the case here. *See, e.g., United States v. Ong*, 541 F.2d 331, 338 (2d Cir. 1976); *United States v. White,* 887 F.2d 267, 270 (D.C. Cir. 1989) ("The prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a codefendant").

Third, Messrs. Parnas' and Fruman's connections to the highly inflammatory allegations involving Ukraine and the President are equally concerning. The extraordinary extent of the pretrial publicity of this case is no secret. The initial indictment included allegations that Messrs. Parnas and Fruman were working with others, including those close to the President, in an effort to, among other things, have the U.S. Ambassador to Ukraine removed from her post. Dkt. 1, ¶

17.  While those allegations have been "streamlined" out of the Superseding Indictment, it is unclear whether the government or defense counsel intends to seek to introduce evidence related to those allegations or to invoke the allegations at a trial of Messrs. Parnas and Fruman.  So too, have there been claims that Messrs. Parnas and Fruman were working with those associated with the President to obtain incriminating evidence against the now-President-elect and his family – or at least the suggestion of the existence of such evidence.  Similar uncertainty exists with respect to the admissibility or intentions of the government or defense counsel with respect to such allegations.  Then, of course, Mr. Parnas also has been a central figure in the impeachment proceedings, repeatedly gave statements to the press and various media outlets, and even sat for hours of interviews.  The government may seek to introduce such statements against Mr. Parnas at trial.  However, since such statements cannot possibly have been made in furtherance of any alleged Foreign Donor Scheme, none are admissible against Mr. Kukushkin.

Under these circumstances, a joint trial of the Foreign Donor Scheme and those making up the remainder of the Superseding Indictment presents a real danger that Mr. Kukushkin will be convicted based on evidence admitted against Messrs. Parnas and/or Fruman in support of the Straw Donor Scheme as well as the evidence admitted against Mr. Parnas in support of the Fraud Guarantee Scheme, even without sufficient proof of Mr. Kukushkin's criminal intent, merely because of his association with Messrs. Parnas and Fruman.  Such a risk, particularly since the schemes are related only tangentially, is unwarranted.

### 3.  Antagonistic Defenses

Finally, conflicts among defense theories and trial strategies may work to the detriment of all defendants, further supporting a severance under Rule 14.  *See, e.g., Gallo*, *supra,* 668 F. Supp. at 751.  If the defenses reach a level of antagonism such that the jury must necessarily

disbelieve the testimony offered on behalf of one defendant in order to believe the testimony

offered on behalf of another defendant, severance is required. *See United States v. Carpentier*,

689 F.2d 21, 28 (2d Cir. 1982) (citing *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.

1981)). *See also United States v. Haynes*, 16 F.3d 29, 31-32 (2d Cir. 1994) (severance is justified

where joinder compromises a specific trial right, though mutually antagonistic defenses are not

prejudicial *per se*).

     In response to claims by the government that the defendants were working together to

fund political contributions with Foreign National-1's money, Mr. Kukushkin expects to argue at

trial that he and Foreign National-1 were victims of Messrs. Parnas and Fruman, not co-

conspirators.[10]  Indeed, even the government suggests in various search warrant applications that

Mr. Kukushkin and Foreign National-1 were defrauded by Messrs. Parnas and Fruman.  More

specifically, the government contends that although it alleges that Messrs. Parnas, Fruman,

Kukushkin, and others agreed that the $1 million provided by Foreign National-1 would be used

to make political contributions and donations, which is denied, virtually none of it was used for

that purpose. ███████████████████  As the government concedes, nearly all of the monies

were used to pay for personal expenses of Messrs. Parnas and Fruman or business expenses of

other entities owned and operated by either or both of them, and which had no association with

Mr. Kukushkin, Foreign National-1, nor any lawful cannabis business of the defendants.  A

---

[10] While Mr. Kukushkin may seek to argue at trial, *inter alia,* that he and Foreign National-1
were defrauded by Messrs. Parnas and Fruman, at this stage of the case, it is difficult to discern
with certainty the full extent to which this and other defense theories and trial strategies for the
various co-defendants will conflict with one another.  Accordingly, in the event the instant
motion is not granted, Mr. Kukushkin reserves the right to renew this motion if additional
evidence and arguments arise that further demonstrate mutually antagonistic defenses will be
presented at a joint trial.

review of the various bank records and credit card statements provided in discovery lays this

bare.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ That

Messrs. Parnas, Fruman, and Correia saw Foreign National-1 and by association, Mr. Kukushkin,

as marks, is no more apparent then by ████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████ In other words, if the government is correct and the money provided by Foreign

National-1 was for the defendants' joint cannabis business, then Mr. Kukushkin and Foreign

National-1 were, ██████████████████████████████ victims and not co-conspirators, and

Mr. Kukushkin's counsel will become a second prosecution team in the courtroom attacking

Messrs. Parnas and Fruman and equating their conduct to that alleged in thefts committed in

connection with the Fraud Guarantee Scheme. *See United States v. Shkreli,* 260 F. Supp. 3d 247,

256 (E.D.N.Y. 2017) (severing where defense counsel's stated intention of acting as a second

prosecutor against co-defendant by arguing defendant just another victim of the co-defendant);

*United States v. Odom*, 888 F.2d 1014, 1015 (4th Cir. 1989) (severance granted after "it became

obvious that [a co-defendant's] attorney had adopted a plan of defense which included doing all

in his power to attack [the other] codefendant[s]"); *United States v. Andrews*, 2013 U.S. Dist.

LEXIS 169745, at *6 (N.D. W. Va. 2013) (severance granted where the court "would have to

choose between restricting [one co-defendant's] defense or permitting [his] attacks on [his co-

defendant]; either option results in prejudice").

### D. Limiting Instructions Will Not Cure the Prejudice

As noted above, in moving for a severance, Mr. Kukushkin recognizes the reluctance of

courts to conduct multiple trials if they can be avoided. *United States v. Feyrer*, 333 F.3d 110,

114 (2d Cir. 2003) ("For reasons of economy, convenience and avoidance of delay, there is a

preference in the federal system for providing defendants who are indicted together with joint

trials"). As Judge Weinstein stated in *Gallo, supra,* 668 F. Supp. at 752, "[in] most cases, the

jury system itself depends on the assumption that the jury will follow the judge's instruction to

limit consideration of some evidence to certain defendants". However, in some cases, as stated

by the late Judge Nickerson in *United States v. Praetorius*, 462 F. Supp. 924, 928 (E.D.N.Y.

1978):

> [t]o expect a jury to perform the intellectual feat in a joint trial of
> using such proof against [some] defendants but not against [others]
> is to ask too much of lay (and perhaps of judicial) minds.
> Accordingly, a severance is appropriate.

In this case, no limiting instructions could be effective to protect Mr. Kukushkin's right

to a fair trial. The Superseding Indictment charges three different schemes comprising three

separately charged conspiracies and two substantive offenses. While two of the three schemes

are similar in nature, the third is not; all are wholly unrelated; and there is limited overlap in

participants and subject matter amongst them. Mr. Kukushkin, however, is charged only in

connection with the Foreign Donor Scheme. We submit that it will be extremely difficult, if not

impossible, for jurors to segregate evidence in their minds – particularly admissions and co-

conspirator statements admitted pursuant to F.R.E. Rule 801(d)(2) – admissible only to prove the

Straw Donor Scheme, or other evidence admissible only to prove the Fraud Guarantee Scheme from similar evidence only to prove the Foreign Donor Scheme.  Nor can they unhear or unsee privileged information they are told or shown.

Under these circumstances, an instruction to the jury that it could not consider the evidence of the Straw Donor and Fraud Guarantee Schemes against Mr. Kukushkin would be confusing, at best.  But more to the point, it would be unfairly prejudicial to Mr. Kukushkin to ask a jury to parse out from the evidence admissible against Mr. Kukushkin, that portion of the evidence allegedly linking his co-defendants to allegations of other unrelated federal election fraud and wire fraud.

### E.  Conclusion

Accordingly, severing the Foreign Donor Scheme Counts and trying Mr. Kukushkin alone is warranted pursuant to Rule 14 since a joint trial would result in prejudicial spillover of evidence and possible conflicts among defense theories and trial strategies and deny Mr. Kukushkin his constitutional right to a fair trial.

### F.  Mr. Kukushkin Joins in the Severance Motions of His Co-Defendants to the Extent Not Inconsistent Herewith

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced by Messrs. Fruman and Parnas in support of their motions to sever either or both the Straw Donor and Fraud Guarantee Schemes from the Foreign Donor Scheme, to the extent they inure to his benefit and are not inconsistent herewith.

POINT FOUR

**THE COURT SHOULD ORDER A DEPOSITION OF FOREIGN NATIONAL-1 PURSUANT TO FED. R. CRIM. P. 15(a)**

### A.  Introduction

Foreign National-1 is neither a citizen nor resident of the United States.  He is not subject to process of this Court.  He is, however, yet another witness with material, favorable evidence who is unavailable to Mr. Kukushkin without intervention of this Court.  Accordingly, the Court should do the only thing it can with respect to this testimony to protect Mr. Kukushkin's constitutional right to a fair trial: order a foreign deposition of Foreign National-1 pursuant to FED. R. CRIM. P. Rule 15(a), to be held in Russia, other mutually agreeable foreign jurisdiction, or video conference.

### B.  The Applicable Law

Pursuant to FED. R. CRIM. P. Rule 15(a), a court may allow a party to a criminal case to depose a prospective trial witness in order to preserve his testimony for trial "because of exceptional circumstances and in the interest of justice".  FED. R. CRIM. P. Rule 15(a).  To demonstrate that exceptional circumstances exist, the "movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material; and (3) the testimony is necessary to prevent a failure of justice".  *United States v. Cohen,* 260 F.3d 68, 78 (2d Cir. 2001); *see also*, *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir.), *cert. denied,* 469 U.S. 1075 (1984); *United States v. Singleton,* 460 F.2d 1148, 1154 (2d Cir.1972), *cert. denied,* 410 U.S. 984 (1973); *United States v. Korolkov*, 870 F. Supp. 60 (S.D.N.Y. 1994).

Whether a witness is unavailable "is to be determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial".  *Johnpoll, supra,* 739 F.2d at 709; *citing Ohio v. Roberts*, 448 U.S. 56,

39

74 (1979); *see also United States v. Des Marteau*, 162 F.R.D. 364, 368 (M.D. Fla. 1995) (granting defendant's motion to take deposition where there is "a substantial likelihood ... that the proposed deponent will not testify at trial").[11]  "Moreover, the lengths to which the [movant] must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness".  *Johnpoll, supra,* 739 F.2d at 709.

Ordinarily, a witness who declines voluntarily to appear at trial is subject to compulsion under subpoena issued by counsel under FED. R. CRIM. P. Rule 17.  Because of this, a court is rarely involved in compelling a witness to appear.  However, where, as here, the individual to be deposed is not a citizen of the United States and does not reside in the United States, that individual is not amenable to United States subpoenas and Rule 15(a) is the appropriate avenue. *See* FED. R. CRIM. P. Rule 17(e)(2); 28 U.S.C. §1783; *Johnpoll, supra,* 739 F.2d 709; *see also United States v. Villar*, 568 F. Supp. 2d 429, 439 (S.D.N.Y. 2008); *United States v. Banki*, 2010 U.S. Dist. LEXIS 35416 (S.D.N.Y. 2010).

Courts may accept the assertions of counsel on the facts relating to unavailability, (*United States v. Sindona,* 636 F.2d 792 (2d Cir. 1980); *United States v. Oudovenko*, 2001 U.S. Dist. LEXIS 2549 at *l (E.D.N.Y. 2001)), as long as those assertions are neither conclusory nor speculative.  *Oudovenko, supra*, 2001 U.S. Dist. LEXIS 2549 at *2-3; *United States v. Chusid*, 2000 U.S. Dist. LEXIS 14007 at *l (S.D.N.Y. 2000).

---

[11] The standard for "unavailability" under this rule is far looser than the standard for "unavailability" within the meaning of F.R.E. 804.  Indeed, a review of the cases shows that depositions have been permitted essentially whenever counsel makes a good faith assertion that the witness will not appear.  *See, e.g.*, *United States v. Dunseath*, 1999 U.S. Dist. LEXIS 3399 (S.D.N.Y. 1999) (elderly witness who is caretaker of frail wife); *Johnpoll, supra,* 739 F.2d 709 (witnesses outside the United States refused to appear at trial unless they and counsel were paid for their time and expenses).

As to materiality, "[i]t is not necessary that [the] defendant show the testimony will surely acquit him". *United States v. Grossman,* 2005 U.S. Dist. LEXIS 3135 (S.D.N.Y. 2005); *United States v. Bronston*, 321 F. Supp. 1269, 1272 (S.D.N.Y. 1971). The testimony is material if it is "highly relevant to a central issue in the case...". *Grossman, supra,* 2005 U.S. Dist. LEXIS 3135 (*quoting United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)); *see also United States v. Little*, 2014 U.S. Dist. LEXIS 60840, *3 (S.D.N.Y. 2014).

In general, testimony "is necessary to prevent a failure of justice" when the witness is unavailable, his testimony is material, and there are no substantial countervailing factors militating against the taking of the deposition. *See*, *e.g., Johnpoll*, *supra,* 739 F.2d at 709; *see also Drogoul*, *supra,* 1 F.3d at 1552-56; *United States v. Sun Myung Moon*, 93 F.R.D. 558, n. 1 (S.D.N.Y. 1982).

All elements are established here. We take each in turn.

**1. The Witness is Unavailable**

Based on the objective facts and the assertions of counsel, Foreign National-1 is unavailable. First, were he willing to voluntarily appear at a trial in the United States, this motion would be unnecessary. Second, Foreign National-1 is not a United States citizen, nor is he a resident of the United States. Thus, he is beyond the subpoena power of the Court. FED. R. CRIM. P. 17(e)(2); 28 U.S.C. § 1783. Third, Mr. Kukushkin's counsel has maintained a relationship with Foreign National-1's counsel since the original indictment was unsealed a year ago. Throughout that time, Foreign National-1's counsel has maintained that Foreign National-1 will not come to the United States under any circumstances, including to testify. *See* Lefcourt Decl. at ¶ 32. This assertion is bolstered by the fact that ███████████████████

████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████   Accordingly, we respectfully submit,

Foreign National-1 is unavailable within the meaning of Rule 15(a).  *See Johnpoll, supra,* 739

F.2d at 707-710; *Sidona, supra,* 636 F.2d at 802-04; *United States v. Korolkov, supra,* 870 F.

Supp. at 65.

2.  **The Testimony is Material**

As to materiality, there can be no doubt that Foreign National-1's testimony meets the

standard. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Specifically, we know ████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

### 3. The Testimony is Necessary to Prevent a Failure of Justice

Having established that Foreign National-1 is unavailable within the meaning of Rule 15 and that his testimony is material, the only question that remains is whether any countervailing factors militate against the taking of the deposition. We submit that they do not. Foreign National-1's testimony would not be cumulative, nor would it constitute inadmissible hearsay. There is no prejudice to the government were this motion granted. And, foreign depositions are routinely ordered when a witness is unavailable and his testimony is material, as is the case here, regardless of supposed concerns of "untrustworthiness" based on a lack of realistic perjury sanction.

### C. <u>Conclusion</u>

Accordingly, the Court should grant Mr. Kukushkin's motion to depose Foreign National-1 in advance of trial in Russia, another mutually agreeable jurisdiction, or by video conference.

## POINT FIVE

## THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR INVASION OF MR. KUKUSHKIN'S ATTORNEY-CLIENT PRIVILEGE

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced by Mr. Fruman in support of his joint motion to dismiss the Superseding Indictment for violation of Messrs. Fruman's, Kukushkin's, and others' attorney-client privilege, or alternative relief.  The attorney-client privilege was held jointly and equally by Messrs. Kukushkin, Fruman and others.  The government invaded that duly recognized privilege without legal right or permission.  The government intrusions identified apply equally to Mr. Kukushkin and violated equally Mr. Kukushkin's rights.  His privileged communications were turned over to the trial team which then relied upon those privileged materials in the government's initial grand jury presentment; used those privileged communications as part of its grand jury investigations, including as probable cause to obtain numerous warrants to search property in which Mr. Kukushkin had legitimate privacy interests, even after being put on actual notice that those materials were privileged; and used the information contained in those privileged communications to subpoena the defendants' attorneys to appear before the grand jury and to produce documents.  The government's conduct should not be sanctioned, and it is neither harmless nor tangential to this prosecution.  Accordingly, the Superseding Indictment should be dismissed.  In the alternative, the government's trial team, including all case agents who were privy to the privileged materials, should be recused, and a hearing and discovery ordered to determine the full extent of the government's invasion of the attorney-client privilege and use of materials obtained thereby.

**POINT SIX**

**ALL EVIDENCE OBTAINED AS A RESULT OF SEARCH WARRANT APPLICATIONS WHICH CONTAINED, REFERENCED AND/OR QUOTED FROM MR. KUKUSHKIN'S ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS OR WAS OBTAINED THROUGH THE FRUITS THEREOF SHOULD BE SUPPRESSED**

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced by Mr. Fruman in support of his motion to suppress all evidence obtained by means of search warrants that relied upon attorney-client privileged communications of Messrs. Fruman and Kukushkin. The attorney-client privilege was held jointly and equally by Messrs. Kukushkin and Fruman, as well as others. The government invaded that duly recognized privilege without legal right or permission. The government's violation of the privilege applies equally to Mr. Kukushkin and violated equally Mr. Kukushkin's rights. The privileged communications were turned over to the trial team which relied upon them to secure search warrants for property belonging to Messrs. Kukushkin and Fruman (and others) in which they had privacy interests, including search warrants dated on or about October 22, 2019 authorizing searches of the contents of Mr. Kukushkin's iCloud account and email account ███████████ ██████ as well as on or about November 13, 2019, authorizing the search of the contents of Mr. Kukushkin's iPhone which was seized at the time of his arrest on October 9, 2019 (█████████ So too, were these privileged communications used to obtain evidence from items and accounts of others, including but not limited to Messrs. Parnas' and Fruman's iCloud accounts and iPhones (dated October 21, 2019; February 27, 2020; and March 20, 2020), and █████████ ████████████████████████████████████████ but which contained Mr. Kukushkin's privileged communications and thus violated his rights and interests. The breaches of the attorney-client privilege and misuse of privileged materials identified by Mr. Fruman apply equally and violated equally the rights of Mr. Kukushkin. Messrs. Kukushkin and Fruman

45

each have standing to challenge the warrants authorizing the search of their own property, i.e., their email accounts, iCloud accounts, phone, and other electronic devices.  Messrs. Kukushkin and Fruman likewise have standing to challenge all warrants relying upon their privileged communications because it is their rights and privacy interests that were violated.  The government's conduct should not be sanctioned, and it is not harmless or tangential to this prosecution.  Accordingly, all evidence obtained from warrants that relied upon, referenced, quoted, or cited Messrs. Fruman's and Kukushkin's privileged communications or was obtained through the fruits thereof should be suppressed.  Alternatively, a hearing and discovery should be ordered.

**POINT SEVEN**

**THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED DUE TO INFIRMITIES, DEFICIENCIES, AND IRREGULARITIES IN THE GRAND JURY PROCEEDINGS WHICH VIOLATE MR. KUKUSHKIN'S CONSTITUTIONAL RIGHTS**

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced in Mr. Parnas' motion to dismiss the Superseding Indictment for grand jury infirmities, deficiencies, and irregularities as well as those advanced by all other defendants in support thereof.  The grand jury infirmities, deficiencies, and irregularities identified by Mr. Parnas apply equally to all counts of the indictment and to all charged defendants.  Accordingly, the Superseding Indictment should be dismissed.

## POINT EIGHT

## THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR SELECTIVE PROSECUTION/SELECTIVE ENFORCEMENT OR IN THE ALTERNATIVE THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE DISCOVERY WITH RESPECT TO THE DEFENDANTS' SELECTIVE PROSECUTION/SELECTIVE ENFORCEMENT CLAIMS

Mr. Kukushkin adopts, incorporates by reference, and joins herein the arguments advanced in Mr. Parnas' motion to dismiss the Superseding Indictment for selective prosecution/selective enforcement as well as those advanced by all other defendants in support thereof.  The selective prosecution/selective enforcement arguments and the facts identified in support thereof by Mr. Parnas apply equally to all counts of the indictment and to all charged defendants.  Accordingly, the Superseding Indictment should be dismissed.

## POINT NINE

## MR. KUKUSHKIN SEEKS LEAVE TO JOIN IN ALL MOTIONS OF HIS CO-DEFENDANTS THAT INURE TO HIS BENEFIT

We respectfully seek leave for Mr. Kukushkin to adopt, incorporate by reference, and

join in all motions of his co-defendants that inure to his benefit and are not inconsistent herewith.

49

**POINT TEN**

**MR. KUKUSHKIN SEEKS LEAVE AND RESERVES ALL RIGHTS TO FILE ADDITIONAL MOTIONS**

Mr. Kukushkin hereby seeks leave and reserves all rights to file additional motions should they become appropriate or necessary based on additional disclosures made by the government or new evidence comes to light.

## CONCLUSION

For all of the reasons set forth above, as well as those contained in the motions of Messrs. Parnas and Fruman, Andrey Kukushkin respectfully requests that the Court grant his Pretrial Motions, as well as those of his co-defendants, along with any other or further relief which to the Court seems just and proper.

Dated: December 1, 2020
        New York, New York

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By /s/  Gerald B. Lefcourt
   Gerald B. Lefcourt (GBL 5030)
   Faith A. Friedman (FAF 6066)

1776 Broadway, Suite 2000
New York, N.Y. 10019
Tel:  (212) 737-0400
Fax:  (212) 988-6192 fax
Email:  Lefcourt@lefcourtlaw.com
*Attorneys for Andrey Kukushkin*

50