UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------ X

UNITED STATES OF AMERICA,

- against-

LEV PARNAS and
ANDREY KUKUSHKIN,

Defendants.

------------------------------------------------------------------------------ X

S1 19 Cr. 725 (JPO)

**DEFENDANT ANDREY KUKUSHKIN'S OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE**

September 28, 2021

GERALD B. LEFCOURT, P.C.
Gerald B. Lefcourt
Faith A. Friedman
1776 Broadway, Suite 2000
New York, N.Y. 10019
Tel: (212) 737-0400
Fax: (212) 988-6192
Email: lefcourt@lefcourtlaw.com
*Attorneys for Andrey Kukushkin*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.......... i

PRELIMINARY STATEMENT .......... 1

POINT ONE

THE DEFENDANTS SHOULD BE ALLOWED TO CROSS-EXAMINE LAW ENFORCEMENT WITNESSES ON ALL MATTERS AND SUBJECTS RELEVANT TO THE CASE .......... 1

POINT TWO

THE PRESENCE OR INVOLVEMENT OF LAWYERS IS ADMISSIBLE EVIDENCE OF THE DEFENDANT'S STATE OF MIND.......... 7

POINT THREE

CERTAIN EVIDENCE OF ACTS THAT OCCURRED AFTER THE GOVERNMENT ALLEGES THE CHARGED CONDUCT WAS COMPLETE BEAR ON THE DEFENDANT'S STATE OF MIND AND IS ADMISSIBLE.......... 10

POINT FOUR

ANDREY KUKUSHKIN SHOULD BE ALLOWED TO IMPEACH MR. PARNAS CREDIBILITY AND OUT OF COURT STATEMENTS THROUGH REFERENCE TO THE ALLEGATIONS RELATING TO FRAUD GUARANTEE.......... 12

POINT FIVE

ANDREY KUKUSHKIN JOINS IN AND ADOPTS THE ARGUMENTS OF LEV PARNAS TO THE EXTENT THE INURE TO HIS BENEFIT AND ARE NOT INCONSISTENT HEREWITH .......... 15

CONCLUSION.......... 15

## PRELIMINARY STATEMENT

Mr. Kukushkin respectfully submits this Memorandum of Law in Opposition to the Government's Motions in Limine seeking *inter alia* to (1) limit the scope of cross-examination of law enforcement witnesses; (2) preclude arguments or implications that the involvement of attorneys in some of the events discussed at trial indicates that the defendants believed they were acting legally with respect to the charged crimes, or otherwise rebuts evidence concerning their *mens rea*; (3) preclude evidence of acts that occurred after the purported completion of the alleged conduct; (4) permitting evidence that Messrs. Parnas and Fruman used monies loaned to Fruman's company, for personal expenses and expenses related to his and/or Parnas' other business interests, and not any joint venture they were purportedly entering into with Messrs. Kukushkin and Muraviev; and (5) seeking a ruling on Messrs. Parnas and Kukushkin's right to impeach each other's credibility prior to the start of trial.[1]

Mr. Kukushkin should be permitted every opportunity to present a full, fair, and robust defense and to the extent the government or Mr. Parnas seek to limit that right, the application should be denied.

## POINT ONE

### THE DEFENDANTS SHOULD BE ALLOWED TO CROSS-EXAMINE LAW ENFORCEMENT WITNESSES ON ALL MATTERS AND SUBJECTS RELEVANT TO THE CASE

Rather than call law enforcement witnesses who were actively involved in the investigation of this case, the government has strategically chosen to use "summary witnesses" it claims have no knowledge of the underlying facts, investigation or investigatory techniques.

[1] Mr. Kukushkin's response is limited to those matters directly relating to the presentation of evidence against him or as to which there appears to be a dispute. Mr. Kukushkin reserves the right to raise or renew any objection during the course of trial as the evidence is presented.

These witnesses will place into evidence various financial records, text exchanges, and email correspondence. The witnesses are Supervisory Special Agent Ellen Thomas, Special Agent Anthony Casola,[2] and forensic accountant Kimberly Espinoza. Through these witnesses the government will present summary charts (which have yet to be produced to the defense) of various exhibits, and walk the jury through them, highlighting (*i.e.* reading) certain portions. *See* Gov't Br. At 12. More specifically, Agent Thomas is expected to testify concerning the search of Mr. Parnas' residence; Agent Casola is expected to testify with respect to summary charts, including timelines, prepared from other exhibits in the case and draw the jury's attention to portions of the underlying exhibits; and Ms. Espinoza is expected to testify about charts she created after a review of financial records which purport to demonstrate the flow of money. According to the government, she may also draw the jury's attention to other exhibits relevant to the flow of money at issue. *See* Gov't Br. at 12.

In the name of "efficiency", the government, relying on Fed. R. Evid. R. 611(b), seeks to limit the defense from exploring with these witness' subject matters the government contends will be beyond the scope of its conscripted and non-substantive direct examination. The restrictions the government seeks to impose are not limited to questions concerning the manner and means by which the investigation was conducted; rather, it extends to anything other than the fact that the documents reviewed, and excerpts chosen for inclusion in any summary exhibits, were identified by the prosecution team. Further, the government insists that its commitment not to create the impression that the evidence referenced, analyzed or included is complete, should be sufficient.

---

[2] The government recently informed the defense that Special Agent Anthony Casola will be testifying in Special Agent Balog's stead since Agent Balog is traveling internationally prior to the start of trial and unable to meet the Court's Covid-19 requirements for admission into the courthouse.

The purpose of the government's motion is obvious; indeed, the government admits it. The government seeks to limit the defense's ability to ascertain facts, to place evidence into context and to present to the jury a full and accurate picture of events. Instead, it seeks to leave the jury with a misimpression of the facts/evidence and then shift the burden of proof to the defense. *See* Gov't Br. at 15. As the government states:

> The defendants may well believe that other events, not depicted in Balog's[3] charts or mentioned in his testimony, support their view of the case. But especially because Balog is not a percipient witness, and rather testifying only about charts and documents identified by the prosecution team, asking him about other documents or events plainly lies outside of his testimony, and has no bearing on his credibility as a summary witness testifying only that the events which do appear in the carts accurately reflect the cited exhibits.

*Id.* at 15-16.

The government correctly predicted that the defense believes that the government's exhibits, in particular, excerpted text and email exchanges are incomplete. They are also missing highly relevant financial records. The government would like to keep it that way. Indeed, that appears to be the very reason for the government's motion. The government's efforts are constitutionally infirm and run afoul of the Federal Rules of Evidence.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him". "'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination'". *Davis v. Alaska*, 415 U.S. 308 (1974) (*quoting* 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)); *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973*); Delaware v. Fensterer*, 474 U.S. 15, 19-20 (1985); *see also Alvarez v. Ercole*, 763 F.3d 223, 229-30 (2d Cir. 2014) ("Supreme Court law

[3] As noted, supra, Agent Casola will be testifying in Agent Balog's place.

clearly establishes that, under the Sixth Amendment's Confrontation Clause, a criminal defendant must have a meaningful opportunity to cross-examine witnesses against him").

The constitution further guarantees "criminal defendants 'a meaningful opportunity to present a complete defense'". *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *California v. Trombetta*, 476 U.S. 479, 485. That right "may not be compromised by 'evidence rules that are arbitrary' or 'disproportionate to the purposes they are designed to serve'". *Holmes v. South Carolina*, *supra* (quoting *United States v. Scheffer*, *supra*, 523 U.S. 303, 308 (1998); *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)).

Against that backdrop, Rule 611(b) of the Federal Rules of Evidence provides that as a general matter "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility". Fed. R. Evid. 611(b). However, the rule also authorizes the trial court in its discretion to "allow inquiry into additional matters as if on direct examination". *Id.* In other words, "trial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination" while enjoying equally wide latitude to provide for inquiry into those matters that are of relevance, even if beyond the scope of the proponent's examination and more akin to direct examination.

Notably, in the very case the government sites as being directly on point, *United States v. Calk,* 19 CR 366 (LGS) (S.D.N.Y. June 29, 2021), the court acknowledged its ability to allow cross-examination to go beyond the bounds of direct examination and for the defense (as well as the government) to make a particular witness its own. *See id.* at pp. 340-341. In fact, although in the interest of expediency under facts of that case, the court, in its discretion, opted not do so with the government's summary witness, it expressly allowed for expanded cross-examination with respect to other witnesses. *Id.* The court also permitted the defense to engage in this type

of cross-examination of a different government witness, who it appears was expected to provide analysis and an opinion of certain loan documents. Finally, while the court chose not to allow it, it acknowledged its authority to permit the defense to admit the entirety of its case through a government witness by asking, "Have you ever seen this?" *See id.* at 337.

Although the government relies solely upon Rule 611, it does not exist in a vacuum. To be sure, Fed. R. Evid. R. 106, in many respects, directly addresses a key issue raised by the government's application. It provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

In other words, Rule 106 – known as the Rule of Completeness – expressly allows for the defense to present the very evidence, in the very manner, at the very time the government seeks to preclude.

Whether it is a prior or subsequent email or text exchange that places a statement or document offered by the government into proper context, more accurate convey the sequence of relevant events, provides background or, most importantly, an innocent explanation for statements or correspondence the government contends are incriminatory, the defense must be able to explore with the government's witnesses the absence of such evidence in any timeline or chart as well as to introduce that evidence through the witness to complete the picture or explain events.[4] And the defense should be permitted to do so at the time the incomplete evidence is offered, as contemplated by Rule 106. Anything less would leave the jury with a misimpression

---

[4] The government hypothesizes that the defense may seek to question summary witnesses like Agents Casola, Espinoza and Thomas, about the means, methods, and quality of the government's investigation. The government contends these witnesses have no knowledge as to these matters and such an inquiry would be beyond the scope of their direct examination, or otherwise impermissible or irrelevant and thus should be precluded. At this point in time, Mr. Kukushkin has no intention of inquiring about those matters with any of these witnesses.

of the evidence and an incomplete and misleading understanding of the operative facts which appears to be the government's objective.

Of course, the evidence the defense may seek to illicit and exhibits it may seek to introduce on "cross" also bear on the value and weight the jury may ascribe to the witness' testimony or afford the summary chart exhibit being presented as an "aid". The defense should not be prevented from exploring these fundamental areas of cross-examination.

In short, this Court has the authority to permit the defense to examine any government witness it chooses, including law enforcement witnesses, on matters that go beyond the scope of the direct-examination. Fed. R. Evid. R. 611(b). The court even has the authority to allow the defense to admit documents and other tangible evidence through the government's witnesses, even if those exhibits are more akin to case-in-chief evidence than impeachment. *See e.g.,* Fed. R. Evid. R. 106; *accord* Fed. R. Evid. R. 611(b). We respectfully submit, that where, as here, we anticipate a limited number of documents at issue, the admission of which would provide necessary background and context to the jury, prevent confusion and provide a more fulsome presentation of the facts, if not exonerate Mr. Kukushkin, fundamental fairness and justice countenance as much.

Accordingly, the government's attempt to limit the defense's presentation, hide inconvenient truths, skew the evidence, prevent a full and fair presentation of the facts, and convict Mr. Kukushkin at all costs, should be denied.

## POINT TWO

## THE PRESENCE OR INVOLVEMENT OF LAWYERS IS ADMISSIBLE EVIDENCE OF THE DEFENDANT'S STATE OF MIND

As the government correctly asserts, Messrs. Kukushkin and Muraviev retained and consulted with counsel in connection with various aspects of what they believed and intended to be a legitimate and lawful joint cannabis venture. Still, as noted, Mr. Kukushkin has no intention of presenting an "advice of counsel" defense at trial. Nor does he seek to avoid the conscriptions or consequences of such a defense, *i.e.,* a waiver of the attorney-client privilege, by asserting what the government refers to as a "presence of counsel defense". To be sure, Mr. Kukushkin does not seek to admit any evidence that the involvement of counsel demonstrates counsel greenlighted, explicitly or implicitly, any charged conduct. Nor does Mr. Kukushkin seek to admit evidence of the presence of counsel to demonstrate that the contributions the government alleges were made by a foreign national – they were not – were lawful.

In fact, Mr. Kukushkin does not intend to argue that it would have been lawful for Strategic Investment Group or its principals or employees to use monies provided by Mr. Muraviev – whether by loan or investment – to make political contributions or donations. Rather, Mr. Kukushkin's defense is simple: (1) there was no agreement (or conspiracy) to have a foreign national make political contributions or donations aggregating to $25,000 in a year; and (2) even assuming *arguendo* the jury finds that the evidence establishes the existence of such an agreement (conspiracy) - it does not - Mr. Kukushkin had no criminal intent. In other words, he had no knowledge nor did he believe that anything the jury may find he agreed to was unlawful and he did not intend to violate the law.

Of course, that "does not mean that the presence of lawyers during parts of the charged conduct has no bearing on the defendants' guilt or innocence". Gov't Br. at 17. On the contrary it is highly relevant.

Evidence is relevant when "it has any tendency to make the existence of any fact … more probable or less probable than it would be without the evidence". Fed. R. Evid. R. 401. Conspiracy and aiding and abetting are both specific intent crimes. In order to prove Mr. Kukushkin joined a conspiracy, the government must demonstrate beyond a reasonable doubt that he knowingly and willfully entered into an agreement to violate the federal election laws prohibiting donations by foreign nationals and straw donors. A defendant acts "willfully" if he acts with knowledge that his conduct is unlawful and with the intent to do something the law forbids. A person's conduct is not "willful" if it is due to negligence, inadvertence, or mistake or without an awareness of the unlawful nature of the purported conduct. Nor is conduct "willful" if it were performed for innocent reasons. *See* Sand, *et al.*, Modern Federal Jury Instructions, Instr. 3A-1 and 3A-3 (citing cases). Thus, a defendant's good-faith belief, even if mistaken or otherwise incorrect, that his conduct is lawful negates the *mens rea* requirement and commands a not guilty verdict. *Id.*

Similarly, aiding and abetting is a specific intent crime which requires a defendant to act knowingly and intentionally to bring about the crime charged.

It is beyond cavil that evidence to rebut arguments of criminal intent is admissible. Thus, "[p]articularly when the evidence is central to the defendant's claim of innocence, ... categorical exclusion 'infring[es] upon a weighty interest of the accused' ... and threatens 'the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing'". *United States v. White*, 692 F.3d 235 (2d. Cir. 2012) (*quoting*

*United States v. Scheffer*, *supra,* 523 U.S. at 308 and *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

As far back as 1944, in *United States v. Matot*, 146 F.2d 197 (2d Cir. 1944), the Court of Appeals held that great "latitude should be accorded a defendant with respect to evidence tending to negate criminal intent". *United States v. Platt*, 435 F.2d 789 (2d Cir. 1970). The *Matot* court emphatically declared that when weighing the admissibility of evidence that would suggest innocence, "all doubts should be resolved for admission". Thus, the Court permitted evidence of a defendant's prior offers to bank officers to repay his overdraft debts to show his lack of intent to defraud, on the ground that a defendant should be permitted to corroborate a denial of criminal intent by conduct which confirmed it.

Mr. Kukushkin's *mens rea* is one of the main issues at his trial. Any evidence that demonstrates or tends to demonstrate Mr. Kukushkin "believed he was acting lawfully", does in fact, "rebut[] the government's purported evidence of his *mens rea*" and is highly relevant and admissible. By way of one example, there are others, the presence of counsel on the "Russian Roots" email, which the government contends is proof Mr. Kukushkin knew his conduct was unlawful, is more likely, or at least equally likely, evidence that Mr. Kukushkin had no knowledge, belief, understanding or concern that his conduct was unlawful. In other words, Mr. Kukushkin's desire to involve attorneys and his inclusion of attorneys in certain matters goes to and is appropriately considered with respect to whether Mr. Kukushkin acted with "bad purpose". To preclude Mr. Kukushkin from presenting such evidence or making such arguments would unconstitutionally infringe upon his right to present material and relevant evidence in his own defense as well as to confront the evidence against him. This is particularly true given the

paucity of evidence that Mr. Kukushkin knew or believed he was doing anything unlawful and acted with bad purpose.

The two cases relied upon by the government, *S.E.C. v. Tourre*, 950 F.Supp. 2d 666 (S.D.N.Y. 2013) and *S.E.C. v. Lek Securities Corp.*, 2019 WL 5703944, *4 (S.D.N.Y. 2019), are inapposite and distinguishable. First, both are civil securities cases, not criminal cases. Second, both stand for the notion that a party should not be able to intimate that counsel blessed a transaction or practice without (1) waiving the attorney-client privilege, or (2) where the party cannot make out all of the elements of an advice of counsel defense. As detailed *supra,* that is not Mr. Kukushkin's intention. Finally, in neither case was the defendants' state of mind, intent, or good-faith belief at issue.

The government's application should be denied.

## POINT THREE

### CERTAIN EVIDENCE OF ACTS THAT OCCURRED AFTER THE GOVERNMENT ALLEGES THE CHARGED CONDUCT WAS COMPLETE BEAR ON THE DEFENDANT'S STATE OF MIND AND IS ADMISSIBLE

The monies provided by Andrey Muraviev to Igor Fruman's business, FD Import/Export were a loan. Formal loan documents were prepared and executed by a representative of FD, Steven Fruman, Mr. Fruman's brother. FD booked the loans accordingly in its books and records. Thereafter, in April 2019, at a point in time when the loan was past due, FD acknowledged its debt in writing. This was prior to any criminal prosecution or even knowledge of any criminal investigation. More recently, the lenders took steps to collect the loans from FD, first demanding repayment and later seeking to enforce its rights under the loan agreements through arbitration.

The evidence demonstrates that Mr. Kukushkin understood the monies provided by Mr. Muraviev were a loan that were to be repaid. Indeed, the evidence establishes all of the defendants, as well as Mr. Fruman's brother understood that to be the case. There are various text exchanges which so provide. Mr. Kukushkin's knowledge of the loan is relevant to determining his state of mind and reasonable belief as to how the funds could be used, who could use them, and that he was not engaging in or agreeing to engage in any unlawful conduct.

Further, we anticipate the government may try to argue that the loan was not legitimate, but a ruse to create the appearance of legitimacy. To the extent that is the case, the conduct of the parties with respect to acknowledgement and collection efforts rebuts that contention.

Finally, the case relied upon by the government, *Lewis v. City of Albany Police Department,* 332 F. App'x. 641, 643 (2d Cir. 2009), is not analogous. To be sure, *Lewis,* was a civil police brutality case in which the officers accused argued that the Plaintiff's prior acts of violence justified their conduct and should have been admitted at trial as probative of their state of mind. The Second Circuit disagreed finding that because the officers only subsequently became aware of the Plaintiff's prior bad acts, it had no bearing whatever on their state of mind at that time of the incident in question. *Id.*

**POINT FOUR**

**ANDREY KUKUSHKIN SHOULD BE ALLOWED TO IMPEACH MR. PARNAS CREDIBILITY AND OUT OF COURT STATEMENTS THROUGH REFERENCE TO THE ALLEGATIONS RELATING TO FRAUD GUARANTEE[5]**

The government intends to introduce out of court statements of Mr. Parnas against Mr. Kukushkin. Accordingly, Mr. Kukushin has the right to impeach Mr. Parnas' credibility. *See* Fed. R. Evid. R. 806.

It comes as no surprise[6] that Mr. Kukushkin alleges that he and Mr. Muraviev were defrauded by and victims of, not co-conspirators with, Messrs. Parnas, Fruman, and Correia and should not be before this Court as an accused.[7] Evidence as to how Messrs. Parnas, Fruman, and Correia's used Mr. Muraviev's money – particularly as compared to how it was supposed to be used – certainly is relevant and admissible. That said, it is not simply, as the government argues, that some portion of the funds Mr. Muraviev lent to Mr. Fruman's company were "diverted" from their joint cannabis business and used by Messrs. Parnas and Fruman to pay for their personal expenses and unrelated business expenses. Rather, none of the money was used for the

[5] Until the government makes a final decision as to whether they intend to call Messrs. Campos and Breyberg as witnesses, we submit that the issue of whether Mr. Parnas can admit evidence of unrelated litigation between Mr. Kukushkin and these potential witnesses for purposes of impeaching Mr. Kukushkin is not ripe and should wait for another day.

[6] The government is well aware that Mr, Kukushkin will be raising this as a defense in this matter. To the extent the government has not already done so, it should be ordered pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), to provide any evidence within its possession, custody, or control that supports this theory of the defense.

[7] It is black letter law that a conspiracy is an "agreement" among alleged conspirators that requires a "meeting of the minds". *Krulewitch v. United States,* 336 U.S. 440, 448 (1949) (Jackson, J. concurring). In the absence of two people agreeing, there is no conspiracy. Thus, "[w]hen one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone". *United States v. Rosenblatt,* 554 F.2d 36, 38 (2d Cir. 1977) (quoting Developments in the Law - Criminal Conspiracy, 72 Harv.L.Rev. 920, 926 (1959)).

benefit of a joint cannabis venture – not to pay political contributions on its behalf, not to pay the legitimate business expenses of the venture, nothing. It was stolen.

But more to the point, Messrs. Parnas and Fruman only pretended to be interested in pursuing a joint cannabis venture and from the very inception never intended to use the funds for any such business, not even for political contributions or donations to promote the ventures interests. It was their sole intention to use Mr. Muraviev's money to pay their debts, fund their own separate business, promote their own personal interests, support their lifestyle and sustain themselves until they could find another victim. And, that is exactly what occurred.

Accordingly, Mr. Kukushkin has no objection to the government admitting evidence consistent therewith. *See*, Gov't Br. Point IX at p. 35. However, it is Mr. Kukushkin's position that evidence establishing that Messrs. Parnas and Fruman did not use the money for the benefit of the purported joint cannabis venture is only part of the story. We submit, that their fraud was part and parcel of a pattern of behavior by Messrs. Parnas and Correia and akin to that which occurred in connection with Fraud Guarantee.

As he had done with "investors" in Fraud Guarantee, likely was attempting to do with GEP, sought to do with Felix Vulis, and did with Messrs. Kukushkin and Muraviev, Mr. Parnas, with the help of Messrs. Correia and Fruman, created a dog and pony show with pictures, invitations, and the like. They portrayed themselves as well-connected, powerful, political powerbrokers, who could speak directly to the President of the United States, his children, his inner circle, and others and with that one conversation have your concerns addressed immediately. They gave the illusion of being backed by, supported by, and directly associated with these powerful men and as a result there was no one better to "partner" with or invest in – or so you were meant to believe. Of course, it was all a ruse, one big fraud or Ponzi scheme, with

money being taken from person to person to keep the charade going. Indeed, even the politicians who fell over themselves to be associated with Messrs. Parnas and Fruman and provided them with unfettered access, were duped.

Mr. Kukushkin sits before this Court because he and Mr. Muraviev fell for Mr. Parnas' con. He believed that Mr. Parnas and Mr. Fruman, the latter a social acquaintance for years, genuinely wanted to create a viable lawful cannabis business with a nationwide presence and that they had the means and connections to lawfully cut through the red tape and roadblocks that had been thrown their way in the past. He is a victim, and he should be able to use evidence of Mr. Parnas' pattern of behavior to prove his innocence.

Finally, the probative value of this evidence far outweighs any prejudice to Mr. Parnas. First, the purpose for which this evidence is being offered is not to demonstrate Mr. Parnas is of bad character or as propensity evidence. Rather, it is evidence which tends to prove that there was no meeting of the minds between the alleged co-conspirators. More specifically, it is evidence of a common plan or scheme and intent, and challenges a critical element of the offense conduct. Moreover, "the term 'unfair prejudice', as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into deciding guilt on a ground different from proof specific to the offense charged". *Old Chief v. United States,* 519 U.S. 172, 180 (1997). The risk that a jury would convict Mr. Parnas based on admission of evidence concerning Fraud Guarantee is particularly low given that the charged conspiracy is not a theft or fraud offense. Indeed, if Mr. Parnas were to admit he defrauded Messrs. Kukushkin and Muraviev, the jury could not, as a matter of law, convict him of the charged conspiracy. Moreover, any such prejudice is outweighed by its probative value to Mr. Kukushkin's defense and can be tempered with a limiting instruction or otherwise eliminated by a severance.

## POINT FIVE

**ANDREY KUKUSHKIN JOINS IN AND ADOPTS THE ARGUMENTS OF LEV PARNAS TO THE EXTENT THE INURE TO HIS BENEFIT AND ARE NOT INCONSISTENT HEREWITH**

Mr. Kukushkin adopts and incorporates herein the arguments of Lev Parnas, to the extent they inure to his benefit and are not inconsistent herewith.

## CONCLUSION

For all of the reasons set forth above, as well as those contained in Mr. Kukushkin's moving papers and all motion papers submitted by Messrs. Parnas and Fruman, Andrey Kukushkin respectfully requests that the Court grant his Pretrial Motions, as well as those of his co-defendants, along with any other or further relief which to the Court seems just and proper.

Dated: September 28, 2021
New York, New York

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By /s/ Gerald B. Lefcourt
Gerald B. Lefcourt (GBL 5030)
Faith A. Friedman (FAF 6066)

1776 Broadway, Suite 2000
New York, N.Y. 10019
Tel: (212) 737-0400
Fax: (212) 988-6192 fax
Email: Lefcourt@lefcourtlaw.com
*Attorneys for Andrey Kukushkin*