LAW OFFICES OF
# GERALD B. LEFCOURT, P.C.
A PROFESSIONAL CORPORATION
1776 BROADWAY, SUITE 2000
NEW YORK, N.Y. 10019

GERALD B. LEFCOURT
lefcourt@lefcourtlaw.com

SHERYL E. REICH
reich@lefcourtlaw.com
FAITH A. FRIEDMAN
ffriedman@lefcourtlaw.com

TELEPHONE
(212) 737-0400
FACSIMILE
(212) 988-6192

October 11, 2021

VIA ECF

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

       *United States v. Kukushkin, et al.* S3 19 CR. 725 (JPO)

Dear Judge Oetken:

  We are counsel to Andrey Kukushkin, a defendant in the above referenced matter. We write on behalf of the defense to request that the Court allow the parties to defer the exercise of any juror for cause and peremptory challenges until a second day of jury selection, after the names of the venirepersons have been disclosed to the parties. The reason for this request is to allow the parties to conduct necessary background research on potential jurors and evaluate potential challenges and strikes.

  "An impartial jury is one in which all of its members, not just most of them, are free of interest and bias." *United States v. Parse*, 789 F.3d 83, 111 (2d Cir. 2015). In *Parse*, a case before Judge Pauley, a jury convicted defendant Parse and three of his co-defendants of numerous financial fraud and tax evasion charges. 789 F.3d at 86. The jury included juror Catherine Conrad, who repeatedly lied during voir dire regarding her level of education, place of residence, criminal history, and other matters. *Id*. at 87-90. Judge Pauley granted a motion for a new trial as to Parse's three co-defendants, but held that Parse had waived his right to an impartial jury because his attorneys had sat on background research collected before and during trial that suggested Conrad's voir dire answers were false. *Id*. at 101. On appeal, the Second

Circuit "had no difficulty with the ruling of the district court in the present case that the jury empaneled to hear the case against these defendants was not an impartial jury." *Id*. at 111. Moreover, the Second Circuit reversed Judge Pauley's ruling that Parse had waived his right to an impartial jury, and vacated Parse's conviction. *Id*. at 118.

The result in *Parse* was that a three-month trial, with 41 witnesses and some 1,300 exhibits, was undone by the falsehoods of one juror during voir dire—falsehoods that could have been uncovered by thorough background research and prompt action by the parties. Numerous bar associations have recognized that trial counsel is expected to conduct internet research on potential jurors. Some bar associations have opined that professional standards of competence and diligence may *require* such research. For example, just weeks after Judge Pauley conducted a post-conviction evidentiary hearing in *Parse*, the New York City Bar Association stated the following in Formal Opinion 2012-2:

> Just as the internet and social media appear to facilitate juror misconduct, the same tools have expanded an attorney's ability to conduct research on potential and sitting jurors, and clients now often expect that attorneys will conduct such research. Indeed, standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case.

Similarly, in 2014, the American Bar Association recognized the "strong public interest in identifying jurors who might be tainted by improper bias or prejudice," and therefore opined that it was proper for counsel to research "a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial. . . ." *See* Standing Committee on Ethics and Professional Responsibility, Formal Op. 466 at 1-2, Am. Bar Ass'n. (2014); *see also* New York State Bar Association, Dec. 8, 2015, Report of the Social Media Committee of the Commercial and Federal Litigation Section, at 15 ("[I]t is not only permissible for trial counsel to conduct Internet research on prospective jurors, but [] it may even be expected.").

Other courts have acknowledged that using the internet to conduct background research on prospective jurors is a "rudimentary practice" during jury selection. *United States v. Stone*, No. 19-0018 (ABJ), 2020 U.S. Dist. LEXIS 67359, at *93 (D.D.C. Apr. 16, 2020); *see also Carino v. Muenzen*, No. A-5491-08T1, 2010 N.J. Super. Unpub. LEXIS 2154, at *27 (Super. Ct. App. Div. Aug. 30, 2010) (trial judge erred in preventing counsel from using the internet during jury selection). It is so routine that a party who fails to uncover disqualifying information about a potential juror, despite a reasonable opportunity to do so, risks waiving the right to use that information in post-conviction proceedings. *Stone* at *90 (denying motion to vacate conviction and for a new trial because, *inter alia*, "the defense could have discovered the [foreperson's social media] posts as early as September 12, 2019, the day counsel received access to the completed juror questionnaires, including the foreperson's, which had her name printed legibly on the signature page.").

As noted previously, this case is being tried in a difficult and cantankerous political climate. Political polarization in the United States is at extreme levels.[1] Members of opposite political affiliations are more likely to harbor distrust and animus towards each other. For this reason, people are loath to openly discuss and share their political positions and views.  Amid this climate, the Court and the parties are faced with a daunting challenge of keeping this divisiveness and antagonism outside of the courtroom so that jurors decide the case based on the evidence alone. We submit that having additional time to conduct background research on each of the venirepersons is the best way to meet that objective and ensure a fair and impartial jury. Balancing the need for efficiency against Messrs. Kukushkin's right to a fair and impartial jury weighs in favor of an overnight recess for jury selection.

Accordingly, we ask that the Court allow the parties to defer exercise of any juror challenges until a second day of jury selection, after the names of the venirepersons have been disclosed to the parties. Doing so will permit defense counsel a reasonable opportunity to conduct this important background research so that Messrs. Kukushkin's and Parnas' constitutional right to a fair trial is preserved. It will also help avoid having to dismiss a juror after they have been seated, should background research reveal an issue that could have been addressed prior to selection of that juror.

Finally, the Court has indicated that it intends to have the prosecution and defense exercise their preemptory challenges simultaneously. The defense objects to this procedure as it creates the risk that it will be deprived of as many as six preemptory challenges. This is particularly concerning and prejudicial given that the defense is already required to share its preemptory challenges among two defendants whose defenses are not necessarily aligned, and as discussed *supra*, this case was highly publicized and involves hot-button political issues. Accordingly, the defense hereby requests that the parties be permitted to exercise their preemptory challenges in rounds on an alternating basis. In addition, the defense requests that the Court exercise its discretion to provide each defendant with three (3) additional preemptory challenges and that the defendants be permitted to exercise challenges separately should they choose to do so. *See* Fed. R. Crim. P. Rule 24 (b).

We thank the Court for its consideration.

Respectfully submitted,

/s/ Gerald B. Lefcourt
Gerald B. Lefcourt

cc:     All counsel (via ecf)

---

[1] Boxell*, et al.*, *Cross-Country Trends in Affective Polarization*, 26669 National Bureau of Economic Research (August 2021), at 2.