UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA

         -v-                                        19-CR-725 (JPO)

LEV PARNAS,
IGOR FRUMAN, and                             **SEALED**
ANDREY KUKUSHKIN,                   OPINION AND ORDER
                        Defendants.
───────────────────────────────

J. PAUL OETKEN, District Judge:

      This opinion addresses the remaining pretrial motion filed by Defendants, which relates to attorney-client privilege. Defendants argue that an email (the "Russian Roots Email"), quoted in several search warrant applications, is protected by the attorney-client privilege and that, as a result, the returns from the search warrants should be suppressed and the Superseding Indictment should be dismissed. The Government contends that the Russian Roots Email is not covered by the privilege, and that even if it is, the privilege was waived and the crime-fraud exception applies.

**I.    Background**

      The Russian Roots Email was sent from Kukushkin to Correia on September 16, 2018, copying the personal email of John Sinadinos, an attorney for some of Kukushkin's other businesses, and Alexander Mikhalev, a partner of Kukushkin in some of those other businesses. Kukushkin wrote:

> Subject: Re: Operating agreement [IWOV-ACTIV.FID122585301
>
> Thank you, David!
> Moscow is beyond beautiful in September whilst I am catching up with
> colleagues and investors.
> Stephen did make a good argument about personal liability protection under C
> Corp formation, which wasn't necessarily the case in certain states, under LLC. I

am just confirming my understanding, unless I missed some other purpose for it please advise.

I believe what's left was for Igor and Lev to establish who is going to be shareholder(s) of the NewCo and could we all use LLC's as our proxy's in it.

I am just trying to establish core structure and how transparent should Andrey be exposed for the benefits of NewCo Transparency, his Russian roots and current political paranoia about it.

Sincerely,

AK

Sent from my iPhone

(USAO_00424240.)  On the same day, Correia responded to this email, copying the same parties:

> Subject: Re: Operating agreement [IWOV-ACTIV.FID122585301
>
> Andrey,
>
> Glad to hear Moscow is going great and that you were having a time to connect with colleagues.  We did launch the entity, hopefully we are on the same page and wish to move forward with a C corp.
>
> Lev, Igor and I will most likely be giving the name of a separate LLC in which we will be partners, or individual entities for each of us..,.will have that decided by EOD tomorrow.
>
> Best to all and I Look forward to our call Tuesday.
>
> Regards,
> David Correia

(USAO_00424249.)  Both emails were part of an email chain, the earlier parts of which included communications with attorneys at Greenspoon Marder LLP.[1]  The Greenspoon Marder attorneys were involved in incorporating and creating an operating agreement for Cannabis Management

---

[1] The Court has reviewed the entirety of the email chain in camera.  The Government's filter team redacted the substance of the emails earlier in the chain so that the prosecution team has viewed only the header information associated with the earlier emails in the chain.

Group, a business created by certain of the Defendants. The last paragraph of the Russian Roots Email was quoted in an October 9, 2019 indictment charging Defendants, as well as in several search warrant applications. The September 17, 2020 Superseding Indictment does not quote from the Russian Roots email.

## II.     Attorney-Client Privilege

### A.     Legal Standards

The attorney-client privilege seeks to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Correia*, 468 F. Supp. 3d 618, 621 (S.D.N.Y. 2020) (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)). "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *Id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)).

To be protected, the "predominant purpose of the communication" must be "to render or solicit legal advice." *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007). "Communications that are made for purposes of evaluating the commercial wisdom of various options as well as in getting or giving legal advice are not protected." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). Where "non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the 'primary' purpose of the document is to seek legal advice." *Medina v. Buther*, 2018 WL 4383098, at *3 (S.D.N.Y. Aug. 22, 2018).

"[T]he attorney-client privilege . . . may be waived, either impliedly . . . or expressly," and "[t]he burden is on the party resisting discovery to establish the facts necessary to show that the privilege . . . has not been waived." *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390- 91 (S.D.N.Y. 2016) (citations omitted). "While the privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Schaeffler*, 806 F.3d at 40.

The privilege is not absolute, and otherwise privileged communications are not entitled to protection if they "relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)). "The [attorney-client] privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15 (1933) (Cardozo, J.).

**B.     Discussion**

Defendants argue that the Russian Roots Email is privileged, noting (1) that it followed from a series of privileged communications with Greenspoon Marder attorneys regarding the formation of their cannabis business, and (2) that Kukushkin copied another attorney, Sinadinos, on the email.

It is true that the earlier email chain with the Greenspoon Marder attorneys contains privileged communications regarding how to form a new cannabis business. Kukushkin, however, forwarded that email chain to Correia, Mikhalev, and Sinadinos, dropping the

4

Greenspoon Marder attorneys. What followed was an exchange of three emails between Correia and Kukushkin, copying Mikhalev and Sinados, the second of which was the Russian Roots Email.

The Government argues that the attorney-client privilege was waived when Kukushkin forwarded the email chain to Mikhalev and Sinados because they were involved in different businesses — not the cannabis entity being formed that was the subject of the Greenspoon Marder attorneys' advice. Defendants point out (and the Government agrees) that Mikhalev and Sinadinos, together with Kukushkin and Muraviev, were involved in "The Oasis Fund," a separate cannabis business based in California. Fruman's counsel asserts "on information and belief" that "there were ongoing discussions that The Oasis Fund would potentially be involved in the Cannabis Venture." And in an affidavit, Kukushkin's counsel states that Mikhalev "served as an advisor to the Cannabis Venture" and that Sinadinos was a legal advisor to the group.

Privilege issues can be particularly difficult in the context of the formation of a new business, where the parameters of the business and key relationships are sometimes not yet clearly established. Still, Defendants have the burden of establishing that a waiver did not occur here, and they have failed to carry that burden. Rather than presenting evidence, Defendants have offered mere assertions, some "on information and belief," in briefs and attorney affidavits regarding the status of Mikhalev and Sinados vis-à-vis the Cannabis Management Group (also referred to as the Cannabis Venture or NewCo). Defendants have not established through sworn declarations or any other competent evidence that either Mikhalev or Sinados actually had a role with the Cannabis Management Group — as principal, employee, consultant, or advisor — as distinguished from their roles with Kukushkin's or Muraviev's other businesses. Nor have they shown that either functioned as a "de facto employee" of the business. *Export-Import Bank of*

*U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *see also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 340 (E.D.N.Y. 1996).  Nor have they established that Mikhalev and Sinados were engaged in a "common legal enterprise" with Cannabis Management Group.

To be sure, the language and context of the communications themselves can be significant in establishing the parties' roles and intent.  Given that Sinadinos was apparently a lawyer for some of Kukushkin's other businesses, the fact that Kukushkin copied Sinadinos in the Russian Roots email to Correia might arguably suggest the Kukushkin was, in part, seeking legal advice — or, more likely, passing along Greenspoon Marder's legal advice (given the reference to "Stephen" and his "good argument about personal liability protection").  But again, the context does not show that Sinadinos was acting as a lawyer *for Cannabis Management Group*.  And even if it did, that would not show that the privilege had not been waived by copying Mikhalev as well.

In any event, the Court concludes that the primary purpose of the Russian Roots email was not a bona fide request for legal advice.  The email was addressed to Correia — and he is the one who responded to it.  Rather than being mainly about legal advice, the email was about making a business decision regarding how to structure the new cannabis business.  This is particularly clear with respect to the final two sentences of the Russian Roots Email:

> I believe whats left was for Igor and Lev to establish who is going to be shareholder(s) of the NewCo and could we all use LLCs as our proxy's in it. I am just trying to establish core structure and how transparent should Andrey [Muraviev] be exposed for the benefits of NewCo Transparency, his Russian roots and current political paranoia about it.

Correia's response buttresses this conclusion:  he says that he, Parnas, and Fruman would "most likely be giving the name of a separate LLC in which we will be partners, or individual entities for each of us," and that they would decide on that by the next day.

Finally, the Court turns to whether the Russian Roots Email is subject to the crime-fraud exception. For the crime-fraud exception to apply, the party invoking it must show that "there is probable cause to believe that a crime or fraud has been attempted or committed" and that "the communications were in furtherance thereof." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). The exception applies only where "there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997). This requires that a "'prudent person' have a 'reasonable basis' for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984).

Even assuming that the Russian Roots Email was privileged and that the privilege was not waived, the Court concludes that it is subject to the crime-fraud exception. First, there is probable cause, independent of the Russian Roots Email, to believe that Defendants engaged in a scheme to solicit contributions from a foreign national and make donations in violation of campaign finance laws. Second, there is a reasonable basis for believing that Kukushkin's communication in the Russian Roots Email was in furtherance of the alleged scheme. Along with other efforts to conceal Muraviev's role in the scheme, the email reveals Kukushkin and Correia communicating about how to conceal the partners' identities — specifically including Muraviev, due to "his Russian roots and current political paranoia about it." Kukushkin argues that the email "has nothing to do with making political contributions and everything to do with the Russia investigation of the President that was going on at the time." It is indeed possible that the email was referring to public-relations concerns about Muraviev's involvement in the business. But it is at least as likely that the email *also* served the purpose of furthering the

foreign-donor scheme. And the Second Circuit has held that "[t]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012).

The Court concludes that the Russian Roots Email is not protected by the attorney-client privilege.

### III.    Conclusion

For the foregoing reasons, Defendants' motion to suppress evidence and to dismiss the indictment is denied.

SO ORDERED.

Dated:  July 29, 2021
        New York, New York

_____
J. PAUL OETKEN
United States District Judge